Argued December 7, 1896;  decided February 15, 1897.

## INMAN v. SPRAGUE.
### (47 Pac. 826.)

GENERAL ASSIGNMENTS—PREFERENCES TO CREDITORS.—Section 3173
    of Hill's Code, declaring that no general assignment by an in-
    solvent for his creditors shall be valid unless made for the benefit
    of all the creditors, is intended to entirely destroy all such assign-
    ments with preferences, but its operation is confined to general
    assignments, and it does not limit or affect the right of a failing
    or insolvent debtor to pay or secure certain creditors with part of
    or all his property.

FRAUDULENT   CONVEYANCES—PREFERENCES   IN   ASSIGNMENTS.—In
    cases where several conveyances are executed about the same
    time, and it is sought to have them considered together as form-
    ing a general assignment, the guiding principle is the actual in-
    tention of the parties; and if the instrument which is claimed to
    create an illegal preference was given and received in good faith,
    to secure or pay a genuine debt, and not as a part of an attempt
    to evade the prohibition against preferences, it will be sustained,
    however near in point of time it may be to a subsequently exe-
    cuted general assignment.

From Multnomah:   LOYAL B. STEARNS, Judge.

Suit by Inman, Poulsen & Co. (a corporation) against E. J. Sprague and wife, John Myers, their assignee, the Commercial & Savings Bank, and the Portland Lumbering & Mfg Co., to have certain instruments cancelled, as constituting a general assignment for creditors with preferences. There was a decree for defendants, and plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the name of *George, Gregory & Duniway*, with an oral argument by *Mr. Ralph R. Duniway*.

For respondents there was a brief and an oral argument by *Mr. Samuel H. Gruber*.

Opinion by MR. JUSTICE BEAN.

On January 23, 1894, the plaintiff commenced an action at law against the defendants E. J. Sprague and wife, and caused all their property, consisting of certain real estate in the City of Portland, to be attached. Thereafter, and on the 25th of the same month, the Spragues mortgaged the attached property to the defendant bank to secure the payment of a promissory note for $400, then long overdue, and which they had repeatedly promised to secure. On the 30th of January they gave another mortgage to the defendant the Portland Lumbering & Manufacturing Company, to secure an indebtedness of $105 due the company, and $400 due their son, Charles S. Sprague, and on the 31st of January made a general assignment for the benefit of creditors to the defendant John Myers. Both the mortgages referred to were accepted by the mortgagees in good faith, to secure bona fide existing debts, and without any knowledge of plaintiff's attachment, or of any intention on the part of the

Spragues to make a general assignment for the benefit of creditors. The assignee immediately qualified, and, having entered upon the discharge of his duties, the plaintiff, on May 3, 1894, presented to him for allowance as a claim against the estate of his assignors a duly certified copy of its judgment recovered in the action at law referred to. Thereafter the assignee made his report of the claims filed against the estate, including that of plaintiff, and applied for and obtained an order authorizing him to pay certain expenses incurred in the management of the estate and · continued to discharge the duties of his office until November 1, 1894, when the plaintiff commenced this suit to have the mortgages and assignment set aside, on the ground that the same were fraudulent and void as. to creditors. The debtors Sprague, the assignee Myers, and the mortgagees, the bank and lumbering company, were all made parties to the suit. Answers were filed, and, on the proof taken, the court held that although no fraud was proven the mortgages and assignments must in law be deemed parts of the same transaction, and, construed as one instrument; that the assignment is void as creating a preference, but that plaintiff is estopped by its conduct from maintaining this suit. From this decree it has appealed.

From the statement of facts it will be observed that the questions presented by the record are, whether the assignment from the Spragues to the defendant Myers is void as creating an illegal preference, and, if so, whether the plaintiff is estopped by its conduct from insisting upon such invalidity. It is claimed that the assignment is void under section 3173, Hill's Code, which provides that "no general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors, shall be valid unless made for the benefit of all his creditors in proportion to the amount of their respective

claims." Standing by itself, the assignment is unobjectionable; it is in the usual form, and purports to transfer all the property of the assignors for the benefit of all their creditors in proportion to their respective claims. But the contention for the plaintiff is that the assignment and mortgages to the bank and lumbering company were but parts of one and the same transaction, and in law form but one instrument, and are, therefore, taken together, in effect, a general assignment with preferences, and within the denunciation of the statute. Unless this position can be sustained from the evidence, the plaintiff's case must fail, for there is nothing in the statute which prohibits a debtor in failing circumstances from preferring one creditor to another, unless it is done in contemplation of and as part of a general assignment. At common law a debtor could lawfully make an assignment with `preferences in favor of certain creditors, and it was to cut this doctrine up by the roots that the statute was passed. But it does not undertake to limit or affect the right of an insolvent debtor to sell or mortgage his property to one or more of his general creditors, even to the exclusion of all the others. Its operation is limited to the matter of general assignments, and the preferences against which it is directed must be contained either in the assignment itself or in some other instrument forming in law a part thereof: Burrill on Assignments, § 167. As said by the Supreme Court of Iowa, in construing a similar statute, it "does not limit or affect the right of an insolvent debtor, or one contemplating insolvency, or, indeed, any other, to sell or mortgage a part or all of his property to one or more of his many creditors, in payment or security of a particular debt or debts. And this is true, although such sale or mortgage may, practically, defeat all other creditors than the grantee from collecting their demands. Nor does the statute prohibit or interfere with

the right of any debtor, as it existed prior to the statute, to make a partial assignment. In other words, the statute does not, expressly or by implication, extend any further or apply to any instrument or conveyance other than to a general assignment. And, therefore, it is still competent for any debtor to pay a part of his creditors in full; to secure another part by mortgage, or deed of trust, upon a part of his property; to make a partial assignment of still other property for the benefit of certain other creditors, with or without preference, and afterwards to make a general assignment. The statute simply provides that such general assignment shall not be valid, unless it is made for the benefit of all the creditors pro rata": *Lampson* v. *Arnold,* 19 Iowa, 479.

The rule, however, is well established that several instruments, executed at or about the same time and forming part of the same transaction, will be considered together and as one instrument, and if, when so construed, they have the effect of a general assignment with preferences, they come within the terms of the statute, and are void: *Burrows* v. *Lehndorff,* 8 Iowa, 96; *Cole* v. *Dealham,* 13 Iowa, 551; *Van Patten* v. *Burr,* 52 Iowa, 518 (3 N. W. 524). But, although several instruments may in fact be executed at or about the same time, they do not necessarily form one transaction, nor must they necessarily be construed as one instrument. Whether they do or not depends upon the character of the instruments, the circumstances of the case, and the intent of the parties; in other words, it is a question of fact to be determined from the evidence, like any other fact in the case. Upon this point the case of *Van Patten* v. *Burr* is peculiarly instructive. In that case an insolvent debtor executed two chattel mortgages and an assignment, all bearing the same date. A suit by an attaching creditor to set the mortgages and assignments aside first came

before the supreme court on a demurrer to the petition, which alleged that the debtor, "in contemplation of insolvency, and being then insolvent, made, executed, and delivered, in writing, a general assignment of his property for the benefit of his creditors contained in three instruments executed by him," and "that said instruments were intended and do constitute, as a whole, a general assignment of his property for the benefit of creditors." And it was held that under such allegations the three instruments constituted but one transaction, and together made a general assignment for the benefit of creditors with preferences, and was void under the statute. The case was remanded for trial, and again came before the court on the merits, when it was held that one of the mortgages was good because it appeared that it had been taken and accepted by the mortgagee without knowledge of the contemplated assignment: *Van Patten* v. *Burr*, 55 Iowa, 224 (7 N. W. 522). And in *Perry* v. *Vezina*, 63 Iowa, 25 (18 N. W. 657), a chattel mortgage executed three hours before a general assignment was held not to invalidate the assignment, it appearing that the debtor did not contemplate making it when the mortgage was made. Indeed, in all cases of this character, the true guiding principle of the decision is the intention of the parties. If the instrument giving a preference is executed and received in good faith, with the intention of paying or securing a bona fide debt, and not as a part of a general assignment under the statute, it is valid, however near its execution may be in point of time to a subsequently executed assignment. But when an insolvent debtor has formed the determination to voluntarily dispose of all his property for the benefit of his creditors, and has entered upon the performance of that determination, the number or character of the instruments used by him to accomplish his purpose is wholly immaterial. The law

will regard all his acts having for their object the accomplishment of this purpose as parts of one single transaction, and will read into the assignment, when executed, all prior acts of the debtor having reference to the disposition of his property, and if any preferences are shown to have been given by him to one creditor over another, the assignment will be declared void under the statute: *Nelson* v. *Garey*, 15 Neb. 531 (19 N. W. 630); *Preston* v. *Spaulding*, 120 Ill. 208 (10 N. E. 903); *Benham* v. *Ham*, 5 Wash. 128 (34 Am. St. Rep. 851, 31 Pac. 459); *Root* v. *Potter*, 59 Mich. 506 (26 N. W. 682); *Root* v. *Harl*, 62 Mich. 420 (29 N. W. 29); *Burnham* v. *Haskins*, 79 Mich. 35 (44 N. W. 341); *South Branch Lumber Co.* v. *Ott*, 142 U. S. 622 (12 Sup. Ct. 318); *Perry* v. *Holden*, 22 Pick. 269.

Within these principles of law, the solution of this case is not at all difficult. There is not a scintilla of evidence in the record to show that the Spragues contemplated making a general assignment at the time either of the mortgages referred to were executed. Indeed, the inference from the testimony is that the intention to do so was not formed until after an unsuccessful attempt on the day of its execution to borrow the money with which to pay the plaintiff's claim. And, further, it is stipulated that the lumbering company, at the time it accepted the mortgage, had no knowledge of any intention on the part of the Spragues to make an assignment for the benefit of creditors, if such an intention existed, and no actual knowledge of plaintiff's attachment, and the undisputed testimony in reference to the bank's mortgage is to the same effect. Both mortgages were received by the mortgagees in good faith, in the usual and ordinary course of business, to secure an existing indebtedness, and under the testimony and the law as we understand it cannot be taken as parts of the subsequently executed assignment. It follows that the decree of the court below must be

affirmed, without considering the question of estoppel, and it is so ordered.

AFFIRMED.