## SABIN v. WILKINS.*

(37 L. R. A. 465; 48 Pac. 425.)

VOID CHATTEL MORTGAGE.— In Oregon a chattel mortgage is void as against attaching creditors whenever it appears either upon the face thereof by extrinsic evidence that the mortgagor has been authorized to dispose of the property in the usual course of trade for his own benefit (*Orton* v. *Orton*, 7 Or. 478, and *Jacobs* v. *Ervin*, 9 Or. 52, approved), though the mortgage may be sustained where the mortgagor disposes of the property but accounts for the proceeds: *Currie* v. *Bowman*, 25 Or. 364, cited.

FRAUD— CONDUCT OF PARTIES.— A mortgage given originally as a security for a genuine debt may be rendered invalid by the subsequent action of the parties. Such will be the result whenever their mutual conduct enables the mortgagor to hinder and delay creditors in reaching property that is lawfully subject to their demands.

FRAUDULENT CONVEYANCE—BURDEN OF PROOF—PRESUMPTION.—A creditor assailing an apparently valid chattel mortgage of his debtor on the ground that by extrinsic agreement or subsequent contract unlimited power of disposition for his own use and benefit was conferred upon the mortgagor must establish his contention in that respect, the presumptions are against him; and the fact that the mortgage lessens the chances of the other creditors for realizing their claims in full does not of itself render the transaction fraudulent.

FRAUD— MORTGAGES.—A debtor in failing circumstances may in Oregon prefer one creditor over another in any manner that he may choose if he does not resort to a general assignment or to devices which being construed in unison may be regarded as equivalent thereto: *Sabin* v. *Columbia Fuel Company*, 25 Or. 15; *Jolly* v. *Kyle*, 27 Or. 95; *O'Connell* v. *Hansen*, 29 Or. 173; and *Inman* v. *Sprague*, 30 Or. 321, approved and followed

From Benton: J. C. FULLERTON, Judge.

Suit by Robert L. Sabin against S. N. Wilkins, Mary A. Wilkins, his wife, F. M. Johnson, his general assignee for creditors, and D. A. Osburn, sheriff of Benton County, to set aside a chattel mortgage to Mrs.

*NOTE.—With this case in 37 L. R. A. 465 is an extensive note considering the effect of insolvency statutes upon a mortgage or sale preferring creditors.— REPORTER.

Wilkins and the general assignment to Johnson on the ground that they were parts of a preconceived plan to assign with a preference. The plaintiff also seeks to have his attachment declared a first lien on the property of Wilkins. The facts are fully stated in the opinion. There was a decree as prayed, from which defendants appeal.

REVERSED.

For appellant there was an oral argument and a brief by *Mr. W. S. McFadden*, to this effect:

Every debtor has the right to prefer one of his creditors to another in the absence of a statute forbidding it. This preference may be given either by paying or securing the debt, and his creditors cannot on that account avoid or invalidate the payment or the security: *Williams* v. *Whedon*, 109 N. Y. 333 (4 Am. St. Rep. 460); *Patton* v. *Leftwich*, 86 Va. 421 (19 Am. St. Rep. 902, 6 L. R. A. 569); *Hage* v. *Campbell*, 78 Wis. 572 (23 Am. St. Rep. 422); *Mackie* v. *Cairns*, 5 Cow. 547 (15 Am. Dec. 477); *Kuykendall* v. *McDonald*, 15 Mo. 417 (57 Am. Dec. 212); *Hempstead* v. *Johnston*, 18 Ark. 123 (65 Am. Dec. 458).

The transfer by an insolvent debtor of all his property in actual payment of a pre-existing debt, though he have other creditors known to the transferee, is not fraudulent—and if there is no actual fraud in the transaction, such conveyance is valid against all other creditors: *Buffum* v. *Green*, 5 N. H. 71 (20 Am. Dec. 562); *Stover* v. *Herrington*, 7 Ala. 142 (41 Am. Dec. 86); *Milburn* v. *Beach*, 14 Mo. 104 (55 Am. Dec. 91); *Johnson* v. *McGrew*, 11 Iowa, 151 (77

Am. Dec. 137); *Witmer's Appeal,* 45 Pa. St. 455 (84 Am. Dec. 505); *Cooper* v. *First National Bank,* 40 Kan. 5 (18 Pac. 937); *Farwell* v. *Jones,* 63 Iowa, 316; *Kruse* v. *Prindle,* 8 Or. 163; *Marquam* v. *Sengfelder,* 24 Or. 2.

A debtor has the right to prefer his creditors and pay and secure those preferred; and he may by chattel mortgage prefer creditors if made in good faith to secure bona fide debts. And further, a mortgage by an insolvent of all his property to secure a bona fide debt, in contemplation of an assignment, is not invalidated by the deed of assignment the day following or the same day: *Gilbert* v. *McCorkle,* 110 Ind. 215 (11 N. E. 296); *South Carolina Loan Company* v. *McPherson,* 26 S. C. 431 (2 S. E. 267); *Stix* v. *Sadler,* 110 Ind. 254 (9 N. E. 905); *Davis* v. *Scott,* 22 Neb. 154 (34 N. W. 353); *Farwell* v. *Jones,* 63 Iowa, 316; *Perry* v. *Vezina,* 63 Iowa, 25; *Gallagher's Appeal,* 114 Pa. St. 353 (7 Atl. 237); Burrill on Assignments (6th ed.), pp. 450–3; *Bailey* v. *Manufacturing Company,* 3 Pac. 756.

Husband may prefer his wife over other creditors. He has a clear and undoubted right to pay her a just debt at any time in money or property, and a man may prefer an honest debt due his wife: *Cornell* v. *Gibson,* 5 Am. St. Rep. 605; *Smith* v. *Hardy,* 36 Wis. 417; 2 Cobbey on Chattel Mortgages, §§ 661–63, 777–78. No stronger proof is required to establish the relation of debtor and creditor between a husband and wife than in other cases; and the husband and wife have no legal advantage over or disadvantage with respect to other creditors. If a husband may prefer a stranger creditor he may prefer his wife, if she is a creditor: Stewart on Husband and Wife, § 45.

An agent may take or receive possession for and in behalf of the mortgagee, or the agent may hold possession for the mortgagee or pledgee, nor is it necessary that the property be removed from its former locality, etc.: Cobbey on Chattel Mortgages, §§ 508–10; *Currie* v. *Bowman*, 25 Or. 364; *Ephriam* v. *Kelleher*, 18 L. R. A. 604; *Pierce* v. *Kelley*, 25 Or. 95; *Re Fisher's Estate*, 25 Or. 64. See 38 Central Law Journal, 79.

For respondent there was an oral argument by *Messrs. Francis D. Chamberlain* and *Thomas G. Greene*, with a brief to this effect:

The chattel mortgage from S. N. Wilkins to Mary A. Wilkins is void, because given on a stock of merchandise, and the mortgagor was left in possession with full power of disposing of the goods for his own benefit: *Orton* v. *Orton*, 7 Or. 478 (33 Am. Rep. 710); *Jacobs* v. *Ervin*, 9 Or. 52; *Bremer* v. *Fleckenstein*, 9 Or. 266.

The assignment for benefit of creditors is void because it contains a preference in favor of Mary A. Wilkins — the assignment asserting that Mary A. Wilkins had a first lien on the stock of furniture for $600 and interest, when no such lien existed: Hill's Ann. Laws, §§ 3173, 3187. (See also authorities cited under next proposition).

The assignment is also void because the chattel mortgage from S. N. Wilkins to Mary A. Wilkins and the assignment for benefit of creditors were parts of one transaction, and the two instruments were intended by S. N. Wilkins to operate as an assignment for benefit of creditors with a preference in favor of

Mary A. Wilkins: Hill's Ann. Laws, §§ 3173, 3187; *Stout* v. *Watson*, 19 Or. 251; *Hahn* v. *Salmon*, 20 Fed. (Or.), 801; *Daggett* v. *Herman*, 16 Fed. 812; *Kellogg* v. *Root*, 23 Fed. (Mich.), 525; *Freund* v. *Yaegerman*, 26 Fed. (Mo.), 812; *Sage* v. *Wyncoop*, 104 U. S. 319; *White* v. *Cotzhausen*, 129 U. S. 329; *Davis* v. *Harrington*, 55 Hun. 109; *First National Bank* v. *Bard*, 59 Hun. 529; *Abegg* v. *Bishop*, 66 Hun. 8; *Hardt* v. *Schwab*, 72 Hun. 109; *Holt* v. *Bancroft*, 30 Ala. 193; *Winner* v. *Hoyt*, 66 Wis. 68; *Richmond* v. *Mills*, 52 Ark. 30 (4 L. R. A. 413); *Livermore* v. *McNair*, 34 N. J. Eq. 478; *Hyman* v. *Barman*, 6 Wash. 516; *Preston* v. *Spaulding*, 120 Ill. 208: *Hide Bank* v. *Rehm*, 126 Ill. 461; *Hanford Oil Company* v. *Bank*, 126 Ill. 585; *Hartman* v. *Rogers*, 153 Ill. 143; *Berry* v. *Coutts*, 42 Me. 445; *Wilks* v. *Walker*, 22 S. C. 108 (53 Am. Rep. 706); *Austin* v. *Morris*, 23 S. C. 392; *Meinhard* v. *Strickland*, 29 S. C. 491; *Putney* v. *Friesleben*, 32 S. C. 492; *Perry* v. *Holden*, 22 Pick. 269; *Heinman* v. *Hart*, 55 Mich. 64; *Benham* v. *Haskins*, 79 Mich. 35; *Burrows* v. *Lehndorff*, 8 Iowa, 96; *Cole* v. *Dealham*, 13 Iowa, 551; *Van Patten* v. *Marks*, 52 Iowa, 518; *Van Horn* v. *Smith*, 59 Iowa 142; *Berger* v. *Varrelman*, 127 N. Y. 281 (12 L. R. A. 808); *Spelman* v. *Freedman*, 130 N. Y. 421; *McAllister* v. *Marshall*, 6 Binn. (Pa.), 338; *Miner's National Bank's Appeal*, 57 Pa. St. 193.

Opinion by Mr. Justice Wolverton.

This is a creditor's suit to set aside a chattel mortgage executed by the defendant S. N. Wilkins to his wife, Mary A. Wilkins, and also an assignment subse-

quently made by Wilkins to the defendant Johnson. Plaintiff's contention, comprehensively stated, is that the mortgage is void upon the alleged ground that the mortgagor was allowed to retain possession of the mortgaged property, and to sell and dispose of the same for his own use and benefit in the usual course of trade; and that the execution of the mortgage was part of a preconcerted scheme to effect a general assignment for the benefit of creditors, but with a preference to Mrs. Wilkins; and, hence, that the assignment is also void. The facts underlying the contention are, in brief, as follows: On January 13, 1894, the defendant Wilkins was the proprietor of a furniture store in Corvallis, and largely indebted to sundry creditors. The representative of the Portland creditors called upon him at noon of that day for the purpose of obtaining security for the payment of their demands, and he was led to believe that unless he made a satisfactory settlement they would attach. During the interview Wilkins gave a statement of his assets and liabilities, but concealed the fact that he was indebted to his wife. Going home to lunch shortly after, he told his wife of his financial condition, and the requirement of these creditors, and it was agreed that he would at once give her a chattel mortgage upon the stock of furniture to secure the payment of a note for $600 executed by him to her August 1, 1892, and in pursuance thereof the mortgage was given and delivered to her, and filed in the clerk's office at fifteen minutes after three that afternoon. The representative remained in Corvallis until the 15th, when Wilkins went with him to Portland,

avowedly for the purpose of effecting a settlement with those creditors, but in the meantime said nothing about the chattel mortgage he had given his wife, of which the creditors had no knowledge until the next day, the 16th, when the fact was disclosed through a mercantile agency. On the 17th Wilkins entered into a written contract with the plaintiff, acting in behalf of such creditors, by which he agreed to pay and plaintiff agreed to accept 75 cents on the dollar in full of such indebtedness, 25 per cent. payable in cash January 24, and the balance, or 50 per cent., in secured notes. On January 23, Wilkins wrote to plaintiff that it was impossible for him to comply with his agreement; on the 24th plaintiff caused the store to be attached, and on the 25th Wilkins made the assignment in question.

We will first consider the present status and legal effect of the chattel mortgage, and then the assignment. It has been decided in this state that when it appears, either upon the face of the mortgage or by parol evidence aliunde, that the mortgagee of personal property has given the mortgagor unlimited power and authority to dispose of the property in the usual course of trade, for his own use and benefit, the mortgage is void as to attaching creditors: *Orton* v. *Orton*, 7 Or. 478 (33 Am. Rep. 717), and *Jacobs* v. *Ervin*, 9 Or. 52. In the latter of these cases there was a separate agreement between the mortgagors and the mortgagees concurrent with the execution of the mortgage that the mortgagors should retain possession of the stock and sell the same as they had done before, for their own use in the usual course of business; and in

the former case the disposition of the mortgaged property by the mortgagor for his own use was permitted without any explicit agreement to that effect at the inception of the mortgage. In a later case (*Currie* v. *Bowman*, 25 Or. 364, 44 Am. & Eng. Corp. Cases, 662, 35 Pac. 848), it was held that a chattel mortgage is valid which by its terms permits the mortgagor to retain possession with power to sell, but which requires him to account to the mortgagee for the proceeds less expenses of sales. These cases indicate very fairly the policy and trend of the law in this state in so far as it is involved by the facts before us. The intent and purpose of the parties in giving and receiving a chattel mortgage is the test of its validity at its inception, but, as it is a thing capable of modification by subsequent agreement, either expressed or implied, by co-operative and wilful disregard of its terms and conditions, it is a prerequisite to its continuing validity that good faith and fair dealing be maintained toward those whose interests may be affected by it. A chattel mortgage given primarily for the benefit of the mortgagor is void as against creditors from the beginning (Hill's Ann. Laws, § 3053), but, if given bona fide, and the parties, by their subsequent treatment of it and the property covered by it, convert it into an instrument calculated to effectuate the same purpose, it is none the less fraudulent and void from the time such purpose is promoted. But where the mortgage has been seasonably and duly filed, want of good faith must be established by the party who attempts to overthrow it, as the presumption stands in favor of honesty and fair dealing.

The mortgage in question is in the usual form, perfectly fair on its face, and permits the mortgagor to retain possession of the property, but expressly forbids any sale or disposal of it or of any part thereof by the mortgagor; so that if there is any infirmity in the mortgage it must be sought for in some extraneous agreement or subsequent treatment of it by the parties, from which we may infer a disregard of its conditions to the hindrance or detriment of creditors.

The prior existence of the note, and that it was given for a valid demand, were practically conceded; but, if it were otherwise, we think the propositions are established by the proof. Mrs. Wilkins testified, in effect, that when the mortgage was given her husband told her that she could take charge of the store and run it until she got her money out of it; that two days later, and after her husband had gone to Portland, she did take charge of it by going in person to the store and notifying the clerk of the condition of affairs and assuming control. Thenceforth, and until the sheriff took charge on the 24th, she says she directed the management of the business, had charge of the receipts, and that they were disbursed only by her authority. When the sheriff attached, he found the clerk in charge, but Wilkins entered soon afterward, procured some keys from the back end of the store, and gave them to him. The clerk, however, had one key, and Mrs. Wilkins another. All the witnesses who pretend to know anything about it concur in the statement that Mrs. Wilkins was about the store nearly every day from Monday the 15th until the attachment, and sometimes brought her lunch for

noon and remained continuously until evening. Af-
ter Wilkins returned from Portland, on the 17th or
18th, he was also about the store until the attachment,
but there is no testimony tending to show that he
sold anything from the store himself, or that he
obtained or used the proceeds of any sales. The busi-
ness sign was not changed, and, barring Mrs. Wil-
kins' presence, the store was apparently conducted as
it had formerly been. The evidence shows an un-
derstanding between the parties that Mrs. Wilkins
should take charge of the property notwithstanding
the condition that the mortgagor should remain in
possession, and it may be said to be fairly established
that she did actually assume possession and control,
with the consent of her husband, and that she so re-
tained it until the attachment. To say the least, it has
not been established that he was permitted, with the
knowledge or tacit consent of Mrs. Wilkins, to con-
duct the business in the usual course, as he had done
before, or to use or appropriate the proceeds of sales
for his own use and benefit in disregard of the mort-
gage conditions. The creditors can only complain
when the mortgage is executed or subsequently used
as a shield for the special benefit of the mortgagor,
and thereby hinders or delays due process of law in
reaching the property and subjecting it to the pay-
ment of valid demands. The mere fact that it may
lessen their chances of realizing their claims in full
does not of itself render the transaction fraudulent, if
the mortgage is otherwise fair, and so treated; but it
is the erection of a false muniment, not intended to
secure the mortgagee so much as to ward off and de-

feat just demands, that works the iniquity, and to avoid which the law affords a remedy. The mortgage must be held to be valid unless it in fact constitutes a part of the general assignment subsequently made.

This court has several times, and quite recently, decided that a person in failing circumstances may prefer one creditor above another, and this he may do in any manner that he may see fit, so long as he does not resort to a general assignment, or to devices which, being construed in unison, may be regarded as equivalent thereto, for the accomplishment of the purpose, and this may now be regarded as the settled law of the state: *Sabin* v. *Columbia Fuel Company*, 25 Or. 15 (42 Am. St. Rep. 756, 34 Pac. 692); *Jolly* v. *Kyle*, 27 Or. 95 (39 Pac. 999); *O'Connell* v. *Hansen*, 29 Or. 173 (44 Pac. 387); *Inman* v. *Sprague*, 30 Or. 321 (47 Pac. 826). If, however, the execution of the mortgage to Mrs. Wilkins is so inseparably connected with the act by which the general assignment was effected that they may stand together, and constitute in reality but one act or transaction, the assignment is void as creating a preference. The statute expressly provides that no general assignment made by an insolvent debtor for the benefit of creditors shall be valid unless made for the benefit of all, and in proportion to the amount of their respective demands: Hill's Ann. Laws, § 3173. The preferment of one or more of the creditors, while assuming to make such an assignment, is in violation of the statute, hence it is that the assignment must fail, because the act by which it is sought to accomplish the purpose is unlawful. Nor is an act in disregard of law any less a

violation thereof because accomplished by indirect or devious methods: See *Inman* v. *Sprague,* 30 Or. 321 (47 Pac 826), and *O'Connell* v. *Hansen,* 29 Or. 173 (44 Pac. 387).

In point of time, the instrument creating the assignment was executed twelve days later than the mortgage. This, however, is but a single circumstance attending the transaction. Before giving the mortgage, Wilkins told the Portland representative that if his property was attached he would have to make an assignment. While in Portland he told the creditors the same thing in purport, and again on the 24th, immediately prior to the attachment, he said that if the creditors would give him time, he could pull through, but if not, he would have to make an assignment; and it seems he constantly foreshadowed the assignment as a result which he would be compelled to bring about if pressed by his creditors. With reference to the mortgage, he said in Portland that he owed his wife the money, was afraid the creditors "meant to jump him," and that he thought she ought to be secured. Finally the attachment came, and then the assignment, and it is urged that Wilkins contemplated an assignment from the first, and that each step was but a pavement of the way to that end, and ought to be so considered. We cannot hold this, under the testimony; the threatened a signment, if such it may be termed, was always conditional, and made dependent upon the attachment of his property at the suit of his creditors, indicating that he had not formed a fixed purpose to assign unless the event happened, but it was evident that he intended to secure his wife in any event.

Suppose he had said in the first place, " I owe my wife, and I mean to give her a mortgage on my stock of furniture at once to secure her; but if the other creditors attach I shall assign." And suppose the creditors had then insisted upon the attachment, and Wilkins had made good his threat by executing the mortgage, and following the attachment with an assignment, it would be quite apparent that there would be a matured purpose to assign with a preference to his wife, because, being apprised of the fixed intention of the creditors, his mind would have come to rest upon the scheme which would have resulted in the assignment. But suppose the creditors had, notwithstanding the announcement of his purpose to secure his wife, continued negotiations for a settlement, and the parties had proceeded with good intentions to accomplish the purpose without the attachment, and had actually entered into an agreement to that end, could it be said that the execution of the mortgage would be a part of a scheme to assign with preference to the mortgagee. This is in effect what really happened. The creditors, with full knowledge of the execution of the mortgage, and cognizant of the fact that Mrs. Wilkins claimed a lien upon the stock for her security, entered into a contract of compromise and settlement with Wilkins, whereas they might have said, " No, we will attach, and if you assign we will break it up." The compromise agreement is entirely inconsistent with the idea of an assignment, and to our minds is conclusive against plaintiff's contention.

It is said that Wilkins did not intend to keep the

agreement, but we cannot conclude that such was the case with the light we have upon the subject. The fact is, he tried to make a similar arrangement for time with Walter Bros., one of the Portland creditors, only a few days prior to giving the mortgage, and before his wife was aware of his financial condition; so that we are led to believe that Wilkins did not conclude upon making a general assignment until the attachment on the 24th, and, therefore, that it is not void. The decree will, therefore, be reversed, and the complaint dismissed, with costs to defendants, and a decree here entered accordingly.

REVERSED.