demption will not reinstate the specific mortgage lien, while it will the general lien acquired by the personal decree. This distinction is clear, and is bottomed both upon principle and authority. The redemption is from the sale, and not from the mortgage; and if the lien of the personal decree has never attached, by reason of the mortgagor not having the fee of the property at the time it' was rendered, there never existed any lien to be reinstated against his successor in interest, who purchased prior to the decree. *Ogle* v. *Koerner*, 140 Ill. 170 (29 N. E. 563), fully sustains this view. For authorities other than those cited in the opinion, see *Standish* v. *Vosberg*, 27 Minn. 175 (6 N. W. 489); *Fowler* v. *Johnson*, 26 Minn. 338 (3 N. W. 986, and 6 N. W. 486); *Campbell* v. *Maginnis*, 70 Iowa, 589 (31 N. W. 946); *Harms* v. *Palmer*, 61 Iowa, 483 (16 N. W. 551); *Harms* v. *Palmer* 73 Iowa, 446 (5 Am. St. Rep. 691, 35 N. W. 515); *Escher* v. *Simmons*, 54 Iowa, 269, 275 (6 N. W. 274). The decree of the court below will be reversed, and one entered here dismissing the complaint.

REVERSED.

Argued November 24; decided December 27, 1897.
## STANDARD SHOE COMPANY *v.* THOMPSON.
(51 Pac. 444.)

PREFERENCES BY INSOLVENT DEBTOR.—An insolvent debtor may use his property to pay or secure one creditor over another, but he may not do this either as a part of or in contemplation of a general assignment ('Hill's Annotated Laws, § 3173); if he does do so, the preferences will stand, and the assignment will be void: *O'Connell* v. *Hansen*, 29 Or. 173; *Inman* v. *Sprague*, 30 Or. 321, and *Sabin* v. *Wilkins*, 31 Or. 450, applied.

FRAUD—INSOLVENCY.—A general assignment by an insolvent is void as to creditors where the insolvent, after practically determining on making an assignment, although before he has obtained the consent of the assignee or drawn up the papers, transfers notes to certain creditors, thereby giving them a preference over other creditors, under Hill's Annotated Laws, § 3173, providing that no general assignment by an insolvent for creditors shall be valid unless it is made for the benefit of all his creditors in proportion to the amounts of their respective claims.

From Linn: HENRY H. HEWITT, Judge.

Suit by the Standard Shoe Company and R. L. Sabin against R. N. Thompson and others, to set aside a certain assignment. The facts are that on the twenty-seventh day of April, 1895, the defendant R. N. Thompson was, and for several years prior to that time had been, engaged in the general merchandise business in North Brownsville, Linn County, and during such time had become and was indebted for goods purchased and money borrowed to such an extent as to render him insolvent. On March 9, 1894, he and his wife executed and delivered to the defendant Bank of Brownsville a mortgage on a part of lot three in block nine in North Brownsville, to secure the payment of an indebtedness of $2,000 owing by him to the bank; but, at his request and for his benefit, it was not filed for record, nor its existence made public, until the twentieth day of April, 1895. On the twenty-sixth of February, 1895, he conveyed to his wife, from whom he had separated in the previous September, some real property in Brownsville, in payment of the sum of $1,000 due her, and this deed was filed for record on March 9, 1895. On the said twenty-seventh day of

April, 1895, plaintiffs commenced action against Thompson to recover the respective amounts due them, amounting in the aggregate to $3,073.01, and caused the stock of goods, safe, store fixtures, and other personal property belonging to him, and also the real estate covered by the mortgage to the Bank of Brownsville and that conveyed by him to his wife, to be attached; but his books of account and promissory notes had been taken from the safe prior to the levy of attachment, and were therefore not seized under the writ.

At the time of the attachment, Thompson was, and had been for some months prior thereto, indebted upon promisory notes to William Hunter in the sum of $500, to the City of North Brownsville in the sum of $250, and to Hannah Newland in the sum of $500; and one A. C. Hausman was his surety on the Hunter note, F. M. Powell on the North Brownsville note, and R. H. Grover on the Newland note. The store was attached in the actions brought by the shoe company and Sabin late Saturday evening; and on the following Monday morning Thompson went to Albany to consult his attorneys, Messrs. Weatherford and Wyatt, but they were busy, and nothing special seems to have been done in the matter, except that he made from his books a list of his creditors and the respective amounts due them, and, with his wife, executed (in payment of a debt due her) a conveyance to his mother-in-law, Mrs. M. J. Hida, of the property theretofore conveyed by Thompson to his wife. During the day several of Thompson's other cred-

itors commenced actions on their claims, and caused the property seized under the plaintiffs' writs to be again attached. In company with Mr. Wyatt, Thompson returned from Albany to Brownsville in the evening, and, within a short time after his arrival, called upon A. C. Hausman, his surety on the Hunter note, and delivered to him certain promissory notes to secure him against liability as such surety, and, on the same evening, likewise secured Powell and Grover, sureties on notes of the City of Brownsville and Mrs. Newland. On the next day there was prepared, and on the day following Thompson executed and delivered, a general assignment of all his property for the benefit of his creditors, to the defendant Coshow; and the sheriff thereupon delivered the attached property to such assignee. This suit was afterwards instituted by the Standard Shoe Company and Sabin for the purpose of setting aside the conveyance from Thompson to his wife, and from himself and wife to Mrs. Hida, the mortgage to the Bank of Brownsville, the assignment to Coshow, and to restore and reinstate their attachment liens, and subject the property seized thereunder, and the proceeds thereof, or so much as may be necessary, to the satisfaction of the judgments obtained in said actions. A demurrer to the complaint by the defendant Bank of Brownsville was sustained; and the plaintiffs refusing to amend, the suit was dismissed as to it. Upon issue joined by the defendants Thompson, Coshow, and Hida, the suit was

tried, and the complaint dismissed, from which decree the plaintiffs appeal.

MODIFIED.

For appellants there was an oral argument by *Messrs. Joseph N. Teal* and *Geo. W. Wright,* with a· brief over the names of *Cox, Cotton, Teal & Minor, Geo. W. Wright* and *J. N. Duncan,* to this effect.

. It has been held repeatedly that any act by an insolvent debtor in contemplation of insolvency, made with intent to thwart the law, is a fraud on the law and the assignment is fraudulent and void. *Hahn* v. *Salmon,* 20 Fed. 801; *Dawson* v. *Coffey,* 12 Or. 513 (8 Pac. 838); *Dawson* v. *Sims,* 14 Or. 561 (13 Pac. 506); *Stout* v. *Watson,* 19 Or. 251 (24 Pac. 230); *Livermore* v. *McNair,* 34 N. J. Eq. 478; *Berry* v. *Cutts,* 42 Me. 445; *Aaronson* v. *Deutsch,* 24 Fed. 465.

Assignments creating preferences are fraudulent and void as to creditors: *Stout* v. *Watson,* 19 Or. 251; *Van Patten* v. *Burr,* 52 Iowa, 518; *Hahn* v. *Salmon,* 20 Fed. 801.

Where a debtor contemplates making an assignment under an act for the equal distribution of his estate, but wishes to prefer a creditor, and, with this intent and in pursuance of this design, secures such creditor with a portion of his property, and, carrying out the original design and intent, afterwards makes an assignment, they will be deemed in law one transaction, and are fraudulent and void as .to creditors: *Burrows* v. *Lehndorff,* 8 Iowa, 96; *Van Patten* v. *Burr,* 52 Iowa, 518; *Van Horn* v.

*Smithy*, 59 Iowa, 142; *Falker* v. *Linehan*, 88 Iowa, 641 (55 N. W. 503); *Bradley* v. *Bailey*, 95 Iowa, 745 (64 N. W. 758); *Hahn* v. *Salmon*, 20 Fed. 801; *Winner* v. *Hoyt*, 66 Wis. 227 (57 Am. Rep. 257); *Livermore* v. *McNair*, 34 N. J. Eq. 478; *Berry* v. *Cutts*, 42 Me. 445; *Perry* v. *Hobden*, 22 Pick. 269; *Kellogg* v. *Root*, 23 Fed. 525; *Dogget* v. *Hermann*, 16 Fed. 812; *Armstrong* v. *Holland*, 35 Fla. 160 (17 So. 366); *Bonner* v. *Carter*, 20 Neb. 566.

In assailing an assignment it is only necessary to establish the fraudulent intent of assignor, and if this be shown the assignment is void and it is not necessary to bring home the fraud to the assignee: *Jacobs* v. *Ewing*, 9 Or. 52; *Gammons* v. *Holman*, 11 Or. 284; *Helms* v. *Gilroy*, 20 Or. 517; *Voos* v. *Wilkinson*, 110 N. Y. 195.

The fraudulent character of an assignment cannot depend upon the opinions of the assignors that what they do is not legally fraudulent. If they withhold from the assignment what should be put into it, and if they make gifts or excessive liens on property which should not thus be encumbered or given away, it is a fraud, and their belief that it is not will not save them from the consequence of fraud: *Hubbard* v. *McNaughton*, 43 Mich. 220 (38 Am. Rep. 176); *Berry* v. *Cutts*, 42 Me. 445; *Rothenberg* v. *Bradley* (Miss.), 10 South, 922.

It is of no consequence that if the assignment be set aside appellants will be the beneficiaries and the inequalities complained of still exist. Courts can only decide whether the assignment comes within the statutes. If it does not it is void. Then the

court's jurisdiction ends and the legislature's begins: *Winner* v. *Hoyt,* 66 Wis. 227 (57 Am. Rep. 257); *Aaronson* v. *Deutsch,* 24 Fed. 466; *Hyatt* v. *Taylor,* 42 N. Y. 258; *Tynan* v. *Walker,* 35 Cal. 634 (95 Am. Dec. 152); *Flint, etc., Railroad Company* v. *Woodhull,* 25 Mich. 99 (12 Am. Rep. 233).

The validity of an instrument is determined by the character with which the law stamps it, and the question of moral fraud does not enter into the consideration of the transaction: Bump on Fraudulent Conveyances (3d Ed.) 25; *Livermore* v. *McNair,* 24 N. J. Eq. 478; *Winner* v. *Hoyt,* 66 Wis. 227 (57 Am. Rep. 257); *Dogget* v. *Hermann,* 16 Fed. 812; *Burger* v. *Varralman,* 127 N. Y. 281.

For respondents there was an oral argument by *Messrs. James K. Weatherford* and *D. R. N. Blackburn,* with a brief over the names of *Weatherford & Wyatt,* and *Blackburn & Somers,* to this effect:

A debtor in failing circumstances can prefer one creditor over another even if contemplating an assignment. Such a transfer is valid if unconnected in time and circumstances with the assignment. *Farrall* v. *Farnan,* (Md.) 5 Atl. 662; *Gilbert* v. *McCorkle,* 110 Ind. 215 (11 N. E. 296); *Bierbower* v. *Polk,* 17 Neb. 268 (22 N. W. 698).

The statute of Oregon does not prevent sales or mortgages of any or all of a party's property in payment of or security for indebtedness, nor limit or affect the right of an insolvent debtor or one contemplating insolvency to sell or mortgage a part of his property to one or more of his creditors in payment of or security for a particular debt. The

statute does not refer to nor apply to any instrument other than a general assignment; *Bock* v. *Perkins,* 139 U. S. 628 (11 Sup. Ct. 677), and authorities above cited.

It is within the power of a debtor to secure a part of his creditors by a transfer of a part of his property and afterwards to make a general assignment. The statute provides that such general assignments shall be for the benefit of all his creditors pro rata: *South Branch Lumber Co.* v. *Ott,* 142 U. S. 622 (12 Sup. Ct. 320). This case construes the Iowa statute from which ours is taken.

Nor is it affected by being followed immediately by a general assignment. The debtor having agreed to secure the persons that had signed his note as surety and in pursuance of that agreement transferred notes to them as collateral security is valid and does not destroy the bona fides of the transfer nor affect the assignment made afterwards. *In re* assignment of *Guyer,* 69 Iowa, 585 (29 N. W. 826); *Van Patten* v. *Burr,* 55 Iowa, 224 (7 N. W. 522); *Sweetser* v. *Higby,* 63 Mich. 13 (29 N. W. 506); *Lake Shore Banking Company* v. *Fuller,* 110 Pa. St. 156 (1 Atl. 731).

Although several instruments may be executed by the debtor at the same time they do not necessarily make one transaction or are to be considered as one instrument. Nor will they affect an assignment made for the benefit of creditors: *South Branch Lumber Company* v. *Ott,* 142 U. S. 622 (12 Sup. Ct. 320); *Lampson* v. *Arnold,* 12 Iowa, 479; *Van Patten* v. *Burr,* 55 Iowa, 224, (7 N. W. 522); *Perry* v. *Vegina,*

63 Iowa, 25; *Gage* v. *Parry*, 69 Iowa, 605; *Garrett* v. *Plow Company*, 70 Iowa, 697 (59 Am. Rep. 461); *Bolles* v. *Creighton*, 13 Iowa, 199; *Loomis* v. *Stewart*, 75 Iowa, 387.

MR. JUSTICE BEAN, after making a statement of the facts, delivered the opinion of the court.

The only question argued or to be determined on this appeal is whether the assignment from Thompson to Coshow is void as to the plaintiffs in this suit. They admit that the mortgage to the Bank of Brownsville, the conveyances to Mrs. Thompson and Mrs. Hida, the transfer of the promissory notes to Hausman, Powell, and Grover as collateral security, are, as to them, valid, and such preferences as Thompson could lawfully make; but their contention is that such transfers, and especially that of the promissory notes to Hausman, Powell, and Grover, were made at a time and under such circumstances as to become in law a part of the subsequently executed assignment, and to render it void under the assignment law. By section 3173 of the statute (Hill's Annotated Laws) it is declared that "no general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors shall be valid unless it be made for the benefit of all his creditors in proportion to the amount of their respective claims." But this provision relates only to general assignments, and does not prohibit an insolvent debtor from in good faith preferring one creditor to another, unless the preference be contained either in the deed of assignment itself, or is so closely con-

nected therewith as to form in law a part thereof: *Inman* v. *Sprague*, 30 Or. 321 (47 Pac. 826); *Sabin* v. *Wilkins*, 31 Or. 450 (48 Pac. 425). If, however, the attempted preference is made by an insolvent in contemplation of a general assignment, and as part of a scheme having for its object the distribution of all his property among his creditors, it will be deemed a part of the subsequently executed assignment, and will render it void, it matters not in what form the preference may have been made or the transaction clothed: *O'Connell* v. *Hansen*, 29 Or. 173 (44 Pac. 387). The authorities upon this question are clear, and will be found fully collated in 3 American and English Encyclopedia of Law (2nd Ed) 76, and in *South Branch Lumber Company* v. *Ott*, 142 U. S. 622 (12 Sup. Ct. 318). Indeed, there is no controversy between counsel as to the law of the case, and the only question is whether the facts, as disclosed by the evidence, bring it within the principle stated.

For the plaintiffs the claim is made that Thompson had practically determined to make a general assignment at the time he returned to Brownsville from Albany, on the evening of the twenty-ninth of April, and that the transfer of the notes to Hausman, Powell, and Grover immediately after his arrival, was a scheme to give them a preference over his other creditors; while the contention for the defendants is that Thompson had not decided at that time to make a general assignment. It seems to us that upon this point the weight of the testimony is clearly with the plain-

tiffs. Mr. Hausman, one of the secured creditors, and his wife, both testify that, on the evening of the twenty-ninth of April, Thompson, who had just returned from Albany, called at their house, and said that he was going to make an assignment; that George Coshow was to be his assignee; that he was going into the store himself, and help invoice the goods, and could make more out of it that way than if a man from Portland was put in charge by the creditors; and that he then turned notes over to Hausman, amounting to about $300 in value, which he said would be sufficient security for one half of his claim, and that he thought the property to be assigned would pay fifty cents on the dollar, and that would pay the claim in full, but, if not, that he would make it good, as he intended to pay his home creditors. Mr. McFerron, the sheriff, testifies that he had a conversation with Thompson in Albany on Monday afternoon, about his books of account, and told him that the attorney for the shoe company was anxious to get possession of them, and that Thompson said, if he made an assignment, he would need them. Mr. A. A. Tussing, an attorney residing at Brownsville, says that on Monday, the twenty-ninth, Thompson told him that he was going to Albany, and that he expected to make an assignment; that he did not believe in allowing some of his creditors to get all his property. In the evening of the same day, after his return from Albany, he was in the office of witness, and told him that he had been to Albany, had secured Hausman and Grover, and would

secure Powell; that Mr. Wyatt had come up with him, and he (Wyatt) was then at Coshow's; that George Coshow would act as assignee, and that he had chosen him because he was a young man, and the president of the Brownsville Bank had advised him to do so, and, as the bank was one of his largest creditors, he felt that he ought to show some regard for his wishes.   Witness further testifies that at that time a dispute arose between Thompson and the cashier of the bank as to whether it could present its claim to the assignee for the full amount on account of the securities held by the bank, and that he, in order to settle such dispute, took down from his library, and read, the decision of this court upon that question; that, before Thompson left the office, he took him to one side, and said to him: "Tussing, the reason that my books were not in the safe the other night was because I had to have my ledger to make an assignment.   That book will be in the safe in the morning."   Mr. Say, the cashier of the bank, and F. M. Powell, one of the parties whom Thompson preferred, were present in Tussing's office at the time of the conversation referred to, and corroborate him as to what occurred at the time, and as to the statements made by Thompson.   Mr. Greene testifies that he had a conversation with Thompson about the fourteenth of May, 1895, and that Thompson told him at the time he considered himself obligated or under obligations to Hunter, Powell, and Hausman, because they had become indorsers on notes that he had executed for borrowed money,

and that he intended to and had protected them by giving them notes as security for their liability as his indorsers, and he named the amount of such notes at the time, of which the witness made a memorandum; that he said he turned these notes over after the attachments of the Standard Shoe Company and Sabin, and that at the time he had made up his mind to make an assignment; that, after the suits were commenced, he went to Albany, for the purpose of consulting Mr. Weatherford, and there ascertained that other suits had been commenced, or were about to be commenced, and then saw the matter was hopeless, and that he would have to make an assignment to fix his friends.

This evidence clearly shows that Thompson made the preferences complained of in view of a contemplated general assignment, and as a part of the same scheme, and this testimony is practically undisputed by Thompson. It is true he says that he hoped to be able to compromise with his creditors, although there is no evidence that he made any effort to do so, and did not fully determine to make the assignment until late Monday evening or Tuesday morning; but he admits that, when he went to Albany to consult his attorneys, he took his ledger along "for use in case it was determined to make an assignment;" that while the matter of the assignment was under consideration, and before any conclusion had been reached, he secured some of his home creditors, and very soon thereafter determined to make the assignment. It may be true that the assignment was not decided

upon at the time these preferences were made, in the sense that the assent of Coshow to act as assignee had been obtained, or that the papers had been drawn and executed; but that it was in contemplation and practically determined upon can hardly admit of serious doubt under all the circumstances of this case, as disclosed by the testimony; at least, that is our conclusion, after a careful examination of the evidence. It follows, therefore, that the decree of the court below must be modified to the extent of setting aside the assignment from Thompson to Coshow, so far as the rights of these plaintiffs are concerned under their attachments.

MODIFIED.