# BOEHREINGER *v.* CREIGHTON, ET AL.

DEED—DESCRIPTION—PAROL EVIDENCE.—A description of land in a deed, in which the initial point is described as "a stake set for a corner, near the road leading past the residence of William Henkle, it being the road leading from Corvallis to the Lloyd settlement," and from which point the boundaries are given by course and distance, with certainty, and the whole tract stated to be in Benton county, Oregon, and to contain 100 acres, is not void for uncertainty, on the face thereof. Parol evidence is admissible to show the precise location of the stake.

ATTACHING CREDITOR—UNRECORDED DEED.—An attaching creditor without notice of a prior unrecorded deed of the property attached, made by the debtor in the writ to a third person, is not affected by such deed. He is entitled to the same protection as a *bona fide* purchaser, for a valuable consideration, would be under the same circumstances, by force of section 148 of the code. But notice of such unrecorded deed would affect him to the same extent as it would a subsequent purchaser for a valuable consideration. The object of the statute was to place them on an equal footing.

IDEM—EVIDENCE.—Where the reasonable conclusion, from all the debtor said to his creditor, during a conversation between them prior to the levy of an attachment, in favor of the latter, upon the real property of the former, was that the debtor had made some arrangement or bargain for the sale of the property to a third person, but had not made a final disposition of it, nor received the purchase money, and such was the actual impression produced upon the mind of the creditor; *Held,* Not to be sufficient notice of a prior unrecorded deed of such property to such third person, to affect the rights of the creditor, under the subsequent levy of his attachment.

APPEAL from Benton County.

*F. A. Chenoweth* and *Tilmon Ford,* for appellant.

*J. W. Rayburn,* for respondent.

By the Court, WATSON, J.:

This was a suit by the appellant, Boehreinger, to enjoin a threatened sheriff's sale of lands, situated in Benton county. The complaint alleges that the plaintiff is the owner and in possession of such lands, and that defendant, Creighton, has caused an execution to be issued upon a judgment of the county court of said county, in his favor and against the defendant Vandersoll, and delivered to the defendant King, as sheriff of said county, who, at Creighton's request, has levied it upon said lands as the property of Vandersoll, and advertised a sale thereof, upon such execution, and will, unless restrained, sell the same, and execute a certificate of sale and sheriff's deed to the purchaser thereof, and thereby create a cloud upon plaintiff's title thereto.

The answer denies plaintiff's ownership and possession, and avers Vandersoll's ownership of said property, a levy thereon under an attachment, issued in the same action, in which said judgment was rendered, on April 5, 1880, the filing and recording of a certificate of such attached property as required by law, the rendition of judgment and order for the sale of such property, and the insolvency of Vandesoll.

The reply denies Vandersoll's ownership, and alleges the execution of a deed from him to plaintiff of the same premises on March 20, 1880, and that Creighton had notice of such deed prior to the levy of the attachment. Upon the final hearing, the circuit court dismissed the suit and rendered judgment against plaintiff for costs. The case is here on appeal from this decree. The appellant insists that Vandersoll never had any title to the land in controversy, by reason of fatal defects in the description of the premises, in the deed through which he claimed title. But that if such deed did convey any title to Vandersoll it passed to appellant by Vandersoll's deed to him of March 20, 1880, which contained the same description of the premises as the former, and that Creighton had notice thereof.

The respondent, Creighton, contends that this description was sufficient, but that appellant's deed had not been recorded, and he had no notice of it at the time his attachment was levied, and therefore ought not to be affected by its existence. The deed to Vandersoll is dated February 22, 1878, and contains the following description: "The following described real estate, to-wit: Beginning at a stake set for a corner, near the road leading past the residence of William Henkle, it being the road leading from Corvallis to the Lloyd settlement. Run thence west 68.25 chains, thence north 14.70 chains, thence east 67.50 chains, thence south 12 degs. east 14.77 chains, to the place of beginning, in Benton county, state of Oregon, containing 100 acres."

We think this description plainly sufficient. The location of the stake can be established by parol proof, and then the courses and distances in the description will readily give the actual boundaries. (*Wing* v. *Burgiss*, 13 Maine, 111; *Blake* v. *Doherty*, 5 Wheat., 359.)

As appellant's deed from Vandersoll, of March 20, 1880,

contained the same description, it was sufficient to pass the title to the property to the appellant. But this deed was not recorded until after the levy of Creighton's attachment on April 5, 1880, and the pleadings present an issue of fact, as to whether Creighton had notice of its execution, prior to that time, which must be determined from the testimony. Our statute has declared that an attaching creditor, from the date of the levy, shall, as against third persons, be deemed a purchaser in good faith, and for a valuable consideration, of the attached property. (Sec. 148, Civil Code.) Counsel for respondents suggested, at the hearing, that the effect of the terms of this statute, places the attaching creditor in as good a position as that of a *bona fide* purchaser for a valuable consideration, notwithstanding his notice of previous unregistered deeds or other instruments. But we do not think any such construction can be tolerated. It would encourage fraud and uphold injustice, instead of enforcing a rule of right and fair dealing among men.

The statute was evidently designed to place him upon an equal footing, but not to confer upon him superior advantages, by protecting him in the enjoyment of the fruits of fraud. The wording of the statute does not demand such a construction, and we can discover no reason or analogy to support it. We are fully satisfied that the terms of the statute do not warrant it, and that it should not receive judicial sanction.

The question next to be considered is one of fact. It is, whether Creighton had, previous to the levy of his attachment, any notice of the unrecorded deed from Vandersoll to appellant, or knowledge of any facts, which ought to have led him as an honest and reasonable man to make suitable inquiries concerning such deed. The appellant relies, to some extent, in his effort to fasten such notice upon the

respondent Creighton, on what a Mr. Hanson told the deputy sheriff, while on his way to levy the attachment. It is not claimed that this information reached Creighton before the levy was made, and we are fully convinced that it cannot be held to affect his rights under such levy. The sheriff was not his agent, and notice to the sheriff or his deputy, of prior unrecorded deeds or instruments affecting the title to the property would not, *per se,* be notice to the attaching creditor. (Freeman on Executions, sec. 343.)

The facts relied upon as affecting Creighton personally with notice are substantially these: On Sunday, April 4, 1880, (the day preceding the levy) Creighton and one Webber went to Vandersoll's house, on the premises in question, to see about the payment of the debt upon which the judgment spoken of was afterwards recovered. Vandersoll told Creighton, on this occasion, either that he had sold, or that he had bargained the premises to a man in Salem, and was going down there on the following Monday or Tuesday, and would draw some money. Creighton suggested to him that perhaps the man would back out. Vandersoll told him that he did not think he would. Early on the following morning, Creighton commenced his action and procured the attachment to be issued. After the attachment had been levied, and on the same day, Hanson, who claims to have been appellant's agent, had a conversation with Creighton at Corvallis, in which he told him he would get nothing through his action against Vandersoll, as the latter had sold the premises. Creighton replied he knew it, but that the deed had not been recorded, and he wanted his money.

Evidently the information which Vandersoll had given Creighton the day before, of his having sold or bargained the property to the man in Salem, and his intention to go down on the following Monday or Tuesday, and draw some

money, was meant to satisfy Creighton that his claim would be paid. But no deed or conveyance was mentioned, and it is quite evident from Creighton's remarks to him, after he had given the information, that the former did not understand that a deed had already been executed, or that any final and binding contract for the sale of the land had been entered into. When Creighton asked Vandersoll, after hearing all the latter had to say about the transaction, if the man he had sold or bargained the premises to, might not back out, and Vandersoll replied "that he thought not," it is quite certain that all he had heard had not created any impression upon his mind that any final sale or disposition of the property had taken place. Nor was the conversation, taken as a whole, calculated to produce any such impression under all the circumstances.

Creighton undoubtedly thought Vandersoll purposed disposing of the property, and drawing the purchase money when he should go to Salem, and hence his haste in procuring its attachment the following morning. What he told Hanson after the levy, can hardly change the result. He might have heard of the deed after the levy; or what is more likely, he was speaking with regard to what he had heard at Vandersoll's, the preceding day. The deed he referred to, was most probably the deed he expected Vandersoll would give upon the consummation of the bargain, of which Vandersoll had spoken. But be this as it may, no notice is made out by the evidence, with the clearness and certainty which the law requires. (1 Story Eq. Jur., secs. 398–400, and notes.)

It is not necessary to pass on the objection that the case made by the pleadings is not within the jurisdiction of equity, for assuming that it is properly here, the conclusions

of fact we have reached, from the evidence, show that the appellant is not entitled to equitable relief. The decree of the circuit court is affirmed, with costs.