Argued June 17, remanded with directions July 1, rehearing denied July 29, 1919.

# SALING *v.* FIRST NAT. BANK OF TILLAMOOK.*

### (182 Pac. 140.)

**Attachment—Notice to Attaching Creditor—Innocent Purchaser.**

1. Where purchaser informed bank, from whom he had borrowed the money with which to make first payment that he had given up the deal and turned the property back to vendor, bank, attaching property two weeks after vendor had retaken possession, was not in the position of an innocent purchaser without notice, having information sufficient to place it upon inquiry.

**Attachment—Adverse Claims—Notice.**

2. An attaching claimant takes subject to any adverse claims of which he has knowledge or sufficient notice to put him upon inquiry, notwithstanding Section 301, L. O. L.

**Attachment—Adverse Claim—Collusion—Pleading.**

3. In action by father to determine adverse claim to father's real estate by son's creditor under an attachment levied upon the property which father had conveyed to son and son had reconveyed to father, allegations of affirmative defense *held* sufficient to charge collusion between father and son.

**Attachment—Collusion—Father and Son.**

4. Where father fraudulently, and acting in collusion with son, conveyed property to son, to enable son to obtain credit, and son secretly reconveyed property to father, but with father's knowledge, held himself out as owner, and father, knowing that son was unable to pay debts secretly, and with intent to defraud son's creditors, filed deed purporting to have been executed by son, father will not be given relief against son's creditors, who attached property subsequent to reconveyance, in equitable action to determine such adverse claim.

**Equity—Equitable Principles.**

5. In suit in equity, equitable rules and principles have full force.

**Equity—Maxim—Clean Hands.**

6. Plaintiff, in equity suit, must come into court with clean hands.

**Equity—Maxim.**

7. He who seeks equity must do equity.

From Tillamook: GEORGE R. BAGLEY, Judge.

---

*On right of creditors to attack attachment for fraud and collusion, see note in 35 L. R. A. 779.   REPORTER.

Department 2.

This is a suit brought by William A. Saling against the First National Bank of Tillamook, Oregon, to determine an adverse claim of the defendant to certain real property under an attachment levied by it upon the property in question, as the property of Charles A. Saling, plaintiff's son. It appears that the plaintiff was originally the unquestioned owner of the property in dispute. About March 9, 1918, he deeded the same to his son, Charles A. Saling. It is claimed by the plaintiff and the proof tended to show that the deed to his son was made in pursuance of an agreement to sell the property to his son for the sum of $17,000.

At the time of the execution of the deed, the plaintiff entered into an agreement with his son, as follows:

"Provided, that if, on or before six months from date, Chas. A. Saling does not give unto William A. Saling a satisfactory mortgage for property this day deeded to said Chas. A. Saling by said William A. Saling and L. E. Saling, husband and wife, then said deed shall become null and void and said Chas. A. Saling does hereby forfeit all right and title in said property forever.

"In witness whereof I have hereunto set my hand and seal this 9th day of March, 1918.

"(Signed) WILLIAM A. SALING.    (Seal)
"CHARLES A. SALING.    (Seal)

"Witness:
·    "HARLEY J. CURL.
"R. E. WILSON."

The deed from plaintiff to his son was filed for record on March 18, 1918. Plaintiff now claims the real arrangement with his son was that the property was deeded to the son and placed in his hands, for the purpose of enabling him to obtain a loan from the federal loan board for the sum of $8,000, out of which said

son was to pay his father $5,000 of the purchase price of the property. In the meantime the son was to hold the property in trust for his father, until the loan was passed on, and if he failed to get the loan, then he should forfeit all his rights in the property and the first payment made thereon.

After arranging for the purchase of the land from his father, Charles A. Saling went to the defendant bank and borrowed $1,000 to make the first payment on the land, informing the bank that he had purchased the land and the improvements, and that he could easily make the payments out of the dairy receipts from the farm. He gave his note to the bank for the loan, due in six months, with interest due at the end of three months, and with the provision that in the event of failure to pay the interest the whole sum should become due at the option of the bank. Charles A. Saling never obtained the loan from the government and never paid his father anything on the purchase price, except the first $1,000 which he obtained from the bank.

About the sixteenth day of July, 1918, Charles A. Saling seems to have given up the deal and turned the property back to his father, by a deed bearing that date. His father immediately took possession of the premises and remained in that possession up to the time of the trial. Charles A. Saling left Tillamook County and went to other parts of the state, whether permanently or temporarily does not very clearly appear. The plaintiff held the deed in his hands, but did not record it until August 15th succeeding. During the interval between the execution of the deed and its recording and about the 31st of July, 1918, the defendant commenced an action against Charles A. Saling on the promissory note executed to it, and, finding

the record title to the land in Charles A. Saling, levied an attachment upon the same.

The plaintiff, after having his deed recorded, commenced this suit to clear the title and determine the adverse claim of the defendant under the attachment proceedings. It appears that prior to the attachment and about the time he turned the property back to his father, Charles A. Saling informed the defendant bank that he had turned the property back, but did not specifically state he had executed a deed. Afterwards, and prior to the attachment, the cashier of the defendant bank was at the place in question and found plaintiff in apparent possession.

The defendant pleaded two defenses. First: That the attachment was levied without any knowledge of the deed from Charles A. Saling to the plaintiff, and, therefore, that it stood in the position of a *bona fide* purchaser in good faith. Second: That there was fraud and collusion between plaintiff and his son to obtain the money borrowed from defendant and to cheat defendant out of the same.

There was a demurrer by the plaintiff, to each of the defenses pleaded by the bank, which was overruled as to the first affirmative defense, and sustained as to the second. Afterwards there was a trial on the issues presented by plaintiff's complaint, and the denials and first affirmative answer, of the defendant. The court found in favor of the plaintiff and entered a decree, determining the attachment lien of the defendant to be invalid, and decreeing the relief prayed for by plaintiff. The defendant appeals from the findings and decree as to the issues tried, and also from the order of the court sustaining the demurrer to defendant's second affirmative defense.

REMANDED WITH DIRECTIONS.

For appellant there was a brief over the name of *Messrs. Talmage, Claussen & Mannix,* with oral arguments by *Mr. C. W. Talmage* and *Mr. Joseph Mannix.*

For respondent there was a brief and an oral argument by *Mr. George P. Winslow.*

BENNETT, J.—1. As to the first affirmative defense offered by the bank, we think the decree must be sustained. It seems to be clearly proven by the evidence that the plaintiff retook possession of the property at least two weeks before defendant's attachment. This, of itself, would seem to be sufficient notice to put the defendant upon inquiry, and to place upon it the burden of diligence to inquire of the plaintiff as to the nature of his possession. In addition to this, it is admitted that about the time Charles A. Saling turned possession over to his father, he informed the defendant, through its proper officers, that he had given up the deal and turned the property back to his father. It is true he did not specifically say he had *deeded* the property back, but we do not think that was necessary under the circumstances, or that the defendant could disregard the information it had, and refrain from making any inquiry from the plaintiff as to the circumstances under which the property was turned back, and still claim to be an innocent purchaser without notice.

2. Section 301, L. O. L., provides as follows:

"From the date of the attachment, until it be discharged or the writ executed, the plaintiff, as against third persons, shall be deemed a purchaser in good faith and for a valuable consideration of the property * * attached."

The language of this section might seem broad enough to put an attaching claimant in the place of a *bona fide* purchaser without notice, where the record title is in the name of the attached debtor, without regard to actual notice or knowledge of adverse equitable claims. But it seems well settled in this state that such an attaching claimant, notwithstanding the statute, takes subject to any adverse claims of which he has knowledge or sufficient notice to put him upon inquiry: *Boehreinger* v. *Creighton,* 10 Or. 42 (23 Pac. 807); *Riddle* v. *Miller,* 19 Or. 468 (23 Pac. 807); *Dimmick* v. *Rosenfeld,* 34 Or. 101 (55 Pac. 100); *Flegel* v. *Koss,* 47 Or. 366 (83 Pac. 847). In *Riddle* v. *Miller,* 19 Or. 468 (23 Pac. 807), it is said:

"Acts of that character have always been construed as giving to a creditor, under such circumstances, such rights only as he would acquire under a voluntary sale of the property to him by the debtor for a valuable consideration. They operate to cut off the equities of third persons in the property, where the proceeding under them is taken and perfected without any knowledge of such equities. In the latter case, the equities between the parties being equal, the law prevails; but where a creditor resorts to such a proceeding who is informed of the outstanding equity, or of facts sufficient to put him on an inquiry by which he could ascertain the existence of such equity, the lien he secures thereby will be subject to it."

These authorities seem to be entirely conclusive as to the defendant's first defense, and entirely justify the findings of the court in relation thereto.

We think, however, that the court erred in sustaining the plaintiff's demurrer to the defendant's second affirmative defense, which is as follows:

"That at all times herein the plaintiff, William A. Saling, and C. A. Saling were father and son.

"That on or about the eighth day of March, 1918, said C. A. Saling, son of William Saling, plaintiff herein, came to the bank of defendant and asked for the loan of one thousand dollars; that for the purpose of inducing defendant to make said loan, which defendant would otherwise have refused to make, said C. A. Saling represented that he had purchased his father's dairy farm, the same being the property described in plaintiff's complaint, and that he needed the thousand dollars to pay to his father, William A. Saling, plaintiff herein, as first payment on the same. Said C. A. Saling further represented to defendant, that with the dairy equipment on said ranch, he could easily pay back to defendant the thousand dollars, together with the interest as it became due, and within the time stated in said note, which was to evidence said loan. That upon said representations, defendant loaned said C. A. Saling the sum of one thousand dollars as stated, and took his note therefor, without any security other than as stated herein, said note being the same referred to in the first separate answer and defense.

"Thereafter said C. A. Saling told defendant that he had turned the ranch herein referred to, back to his father William A. Saling, plaintiff herein, and that therefore he would be unable to pay said note out of his milk checks as he had agreed. That thereupon the defendant requested said C. A. Saling to pay what was due on said note, but that he failed, neglected and refused to pay the same. That thereupon defendant requested plaintiff herein, to pay back said One Thousand Dollars or to secure the payment of the same, but that plaintiff refused and still refuses to pay the same or to secure the same in any manner. That at all times herein plaintiff and his son, the said C. A. Saling acted in conspiracy with the fraudulent intent and purpose of cheating and defrauding said defendant. That plaintiff and his said son well knew at the time that said C. A. Saling applied for the loan of one thousand dollars from defendant herein, that said C. A. Saling would not and could not pay said

note when it came due or at any other time and said plaintiff and said C. A. Saling worked this scheme, solely for the purpose of obtaining from defendant said one thousand dollars, without giving any security, so as to cheat and defraud defendant out of said sum. That except for the property and dairy equipment herein mentioned, the said C. A. Saling was insolvent, at all times material herein, and the plaintiff well knew of his son's insolvency, and well knew that when said son received said thousand dollars, that said son did not intend to pay the same back, and plaintiff well knew that his son had no property, except what plaintiff placed in his hands as herein set forth, to secure the payment of said note, and plaintiff well knew that said son would do and intended to do the very thing which he afterwards did, to wit: abscond from Tillamook, Oregon, to parts unknown to defendant and other creditors, for the purpose of evading process.

"That at the time when defendant filed its attachment as aforesaid, said defendant believed that the title to said property was in said C. A. Saling, and the records of Tillamook County, Oregon, where the property is situated, showed said property to be owned by said C. A. Saling; but that since that date of attachment, it has transpired and come to the attention of the defendant, that on the very day and at the very time, that plaintiff deeded said property to C. A. Saling, his son referred to herein, to wit: on or about March 8, 1918, said plaintiff caused his son, C. A. Saling to deed back said property to himself, and at all times herein the said plaintiff, William A. Saling had that deed in his possession and under his control and ready to use at any time that he saw fit. That plaintiff herein well knew that his son C. A. Saling held himself out to the defendant and to the public generally as the owner of said property, and plaintiff placed said property in the name of C. A. Saling in order that he might use the same to get credit with. That plaintiff did not record the deed which he took back as aforesaid at that time or at any other time, but subsequently said plaintiff secretly and fraudu-

lently and for the very purpose of defrauding defendant, and other creditors of C. A. Saling, his son, filed a deed purporting to have been executed by his son, C. A. Saling to himself, conveying said property from C. A. Saling to himself, said deed bearing date the sixteenth day of July, 1918, and plaintiff recorded the same on the fifteenth day of August, 1918, in 'the Record of Deeds of Tillamook County, Oregon. That said deed was not recorded until long after the date of defendant's attachment against ,said property, and that plaintiff now brings this suit to withdraw said property from defendant's attachment, and sets out his deed obtained by fraud as aforesaid, and plaintiff seeks equitable relief without in 'any way making a tender of the thousand dollars, which he secured from defendant by his fraudulent act, and for which he never furnished the least consideration.

"That at the time of the execution of the note herein referred to by said C. A. Saling to defendant herein, the representations made by said C. A. Saling to the defendant herein, were false; that said C. A. Saling knew them to be false and that they were made by said C. A. Saling with the intent to deceive the defendant. That the defendant herein acted upon said false statements in good faith and without knowledge of their falsity; that defendant had no means of ascertaining their falsity, by reasonable diligence and that defendant would not have acted upon them if it knew the truth. That at all times herein, plaintiff and C. A. Saling were father and son and were acting in collusion and conspiracy, with the common purpose and design of cheating and defrauding defendant."

3, 4. These allegations are not very direct and certain as to the collusion and fraud on the part of plaintiff, and as to plaintiff's participation therein; but it seems the following allegations, when taken together, sufficiently fasten a charge of collusion upon him:

"That at all times herein, plaintiff and his son, the said Charles A. Saling, acted in conspiracy with a fraudulent intent and purpose of cheating and de-

frauding the said defendant. * * That plaintiff herein well knew his son, Charles A. Saling held himself out to the defendant, and to the public generally, as the owner of said property, and plaintiff placed said property in the name of C. A. Saling in order that he might use the same to get credit with. * * Subsequently said plaintiff secretly and fraudulently and for the very purpose of defrauding defendant, and other creditors of C. A. Saling, his son, filed a deed purporting to have been executed by his son to himself. * * That at all times herein plaintiff and C. A. Saling were father and son and *were acting in collusion and conspiracy,* with the common purpose and design of cheating and defrauding defendant.''

If these allegations were true, we think plaintiff must fail in this suit without regard to what his technical rights may be in regard to the premises.

5-7. This being a suit in equity the equitable rules and principles have full force. One of these well-established rules is, that the plaintiff in an equity suit must come into court with ''clean hands.'' Another is, ''He who seeks equity must do equity.'' If plaintiff had all the time been in collusion with his son for the fraudulent purpose of getting the money in question from the defendant, and turning it over to his father, thereby defrauding the defendant of the same, as alleged in the answer, he certainly is not coming into court with clean hands, and he would not be doing equity unless he first returned the $1,000 which he had thus fraudulently helped to obtain. In that even his equitable proceeding would fail and he would have to depend upon his remedy in a law action, where he might be able to maintain his technical rights.

The whole transaction is at least suggestive of fraud and unfair practices. It may be that upon a trial it will develop that everything was fair and regular, and

that there was no intentional fraud; but the defendant should have a right to establish the fraudulent acts of Charles A. Saling and the collusion therein of the plaintiff, if it can do so by competent evidence.

The case is therefore remanded in order that the demurrer may be overruled and the defendant have an opportunity to present any evidence it has as to the defense of fraud and collusion.

REMANDED WITH DIRECTIONS.   REHEARING DENIED.

MCBRIDE, C. J., and BEAN and JOHNS, JJ., concur.