In re REESE-HAMMOND FIRE BRICK CO.

SOISSON v. FIRST NAT. BANK OF PITTSBURGH.

(Circuit Court of Appeals, Third Circuit. September 21, 1910.)

No. 1,357.

1. BANKRUPTCY (§ 165*)—VALIDITY OF LIENS—COLLATERAL SECURITY PLEDGED GENERALLY FOR INDEBTEDNESS.

A note given by a corporation more than four months before its bankruptcy, reciting that the maker had deposited "as collateral security for said sum, or for any other liability or liabilities of ours to the holder hereof, now due or to become due," certain property, including assigned accounts, *held* to entitle the bank to hold such accounts as security for a prior note given to it by the bankrupt and then unpaid; the good faith of the transaction being unquestioned.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 165.*]

2. BANKRUPTCY (§ 165*)—"VOIDABLE PREFERENCE"—SUBSTITUTION OF SECURITIES.

The assignment by a corporation within four months prior to its bankruptcy of accounts receivable to a bank to secure a prior indebtedness did not constitute a voidable preference under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), although the corporation was known to be insolvent, where such accounts were merely substituted for other valid accounts held by the bank, which had been paid, for the purpose of keeping the security good.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 165.*]

Appeal from the District Court of the United States for the Western District of Pennsylvania.

In the matter of the Reese-Hammond Fire Brick Company, bankrupt. On appeal by William F. Soisson, trustee, from an order of the District Court in favor of the First National Bank of Pittsburgh. Affirmed.

Roland D. Swoope and James S. Beacom, for appellant.
William M. Hall and George C. Bradshaw, for appellee.

Before BUFFINGTON and LANNING, Circuit Judges, and ARCHBALD, District Judge.

LANNING, Circuit Judge. The question in this case is whether certain accounts assigned by the bankrupt to the First National Bank of Pittsburgh, and certain moneys collected by Soisson, trustee in bankruptcy, on other accounts assigned by the bankrupt to the bank, belong to the bank or to the trustee in bankruptcy. The referee decided that they belong to the trustee. The District Court, on a petition to review the referee's findings, decided that they belong to the bank.

The second assignment alleges error on the part of the court in finding that "no evidence was offered on behalf of the trustee or any creditor." This is an erroneous statement by the court, and is probably explained by the fact that there is nothing in the record showing for which of the parties the witnesses were respectively called, except as we observe which of the counsel conducted the direct and which

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the cross examinations. The error, however, is harmless. The evidence was all before the court, and was all considered by it.

The third assignment alleges error in that the court found that a certain promissory note for $37,500, dated April 27, 1903, made by the bankrupt and secured to the bank by a deposit, as collateral, of bonds of the bankrupt of the par value of $60,000, was further secured to the bank by book accounts by reason of the terms of a later promissory note, dated February 27, 1907, made by the bankrupt to the bank, for the sum of $86,791.01. By the terms of this later note it was declared that the bankrupt had deposited therewith, "as collateral security for said sum, or for any other liability or liabilities of ours to the holder hereof now due or to become due, or that may be hereafter contracted, the following property," amongst which is named "assigned accounts." The president of the bankrupt company, who signed the later of the notes, testified that the accounts were not assigned as collateral for the note of $37,500; but his testimony cannot overcome the effect of the language of the later note. Neither is that language ineffective by reason of the fact that the board of directors of the bankrupt company did not authorize an assignment for that purpose in a certain resolution passed by the board nearly a year before the later note was given. The later note was given more than four months before the bankruptcy proceedings were commenced, and there is nothing to show that its execution to the bank was not duly authorized, or that its language should not have its natural effect.

The first, sixth, and seventh assignments of error are general and indefinite. They are simply to the effect that the court erred in reversing the referee. We have considered them, however, in the light of the arguments based thereon. We think no error has been shown, unless it be in the findings of the court specifically mentioned in the fourth and fifth assignments of error. We pass therefore to their consideration.

These assignments of error present the question whether the assignments of the book accounts gave to the bank a preference, contrary to section 60 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]). It appears that on October 3, 1903, a receiver for the Reese-Hammond Fire Brick Company had been appointed by a state court. The ground for the receivership was insolvency. The bank then held the above-mentioned note for $37,-500, which had been reduced to $31,304.29. In March, 1906, the receiver was discharged, the property restored to the company, and its business put into the hands of a creditors' committee. This committee managed the business of the company until July 22, 1907, and then filed the petition which was the commencement of the present bankruptcy proceedings. On April 20, 1906, two of the members of the creditors' committee were elected directors of the company, and on the same day the directors passed a resolution authorizing its president to assign to the bank "any or all book accounts of the Reese-Hammond Fire Brick Company and allied interests" as collateral security for such moneys as the bank should loan to the company, not exceeding $100,000. Subsequently notes were given by the company to the bank for loans made, and on February 27, 1907, the outstanding

notes, excepting the one of April 27, 1903, for $37,500, and another dated February 20, 1907, for $9,500, were consolidated in the one note above mentioned for $86,791.01. During the period from April 20, 1906, to February 27, 1907, as assigned accounts were paid off, other accounts were substituted for them, and thus the bank's collateral was preserved in a form satisfactory to it. This practice continued after February 27, 1907, but for what period does not appear. It does appear that on May 13, 1907, and July 16, 1907, the company delivered to the bank lists of accounts receivable, with assignments thereof.

These transactions were within the period of four months next before the commencement of the bankruptcy proceedings. They are vigorously attacked by counsel for the trustee in bankruptcy as amounting to voidable preferences in favor of the bank. But it is found as a fact by the court below, and the evidence amply supports the finding, that before these lists were prepared the invoice for each account mentioned in the lists had, on its date, been separately assigned to the bank. For aught that appears, each of the invoices was dated and assigned before the commencement of the four months' period. However that may be, the weight of the evidence supports the court's finding that the accounts assigned took the places of accounts paid, and that these transactions did not impair the rights of the general creditors, for the reason that the substitutions of new for old securities did not in any wise diminish the debtor's estate available for those creditors. "It is too well settled to require discussion that an exchange of securities within the four months is not a fraudulent preference within the meaning of the bankrupt law, even when the creditor and the debtor know that the latter is insolvent, if the security given up is a valid one when the exchange is made, and if it be undoubtedly of equal value with the security substituted for it." Sawyer v. Turpin, 91 U. S. 114, 120, 23 L. Ed. 235. See, also, Stewart v. Platt, 101 U. S. 731, 742, 25 L. Ed. 816.

We find no error in the decree of the District Court, and it is accordingly affirmed, with costs.