Submitted on briefs September 19, modified October 24, 1922, argued on rehearing January 16, former opinion sustained on rehearing January 30, 1923.

## TESHNER *v.* ROOME.

### (210 Pac. 160; 212 Pac. 473.)

**Chattel Mortgages — Mortgage Valid Notwithstanding Mortgagor may Sell Property and Account to Mortgagee.**

1. Instruments, purporting to be chattel mortgages given to secure the purchase money of stock automobiles kept for sale by a partnership motor company, given in good faith with no intent to defraud, are valid as such, notwithstanding an oral agreement that the mortgagors may at any time dispose of the mortgaged property on condition that they keep an accurate record of the proceeds and account to the mortgagee in satisfaction of his lien.

**Bankruptcy—Chattel Mortgage for Purchase Money on Stock Cars is not an Unlawful Preference.**

2. A chattel mortgage, given by a motor company to secure borrowed purchase money for stock cars, is not an unlawful preference under the Bankruptcy Act.

---

Validity of a chattel mortgage of stock of merchandise as affected by a provision or agreement giving the mortgagor possession with power of sale, see notes in 15 Am. St. Rep. 912; 18 L. R. A. 604; 36 L. R. A. (N. S.) 1181.

**Bankruptcy—Substitution of Securities Held not a Preference.**

3. The substitution of securities does not create a preference, where the estate of the debtor is not diminished thereby.

**Bankruptcy—Trustee in Bankruptcy Stands in Position of Attaching Creditor as Respects Unrecorded Chattel Mortgage.**

4. As against a chattel mortgagee not in possession of the goods and whose mortgage is not recorded, the trustee in bankruptcy stands in the position of attaching creditor, having obtained a lien by levy of attachment or execution when the petition was filed.

**Bankruptcy—Priority of Chattel Mortgage as Against Trustee in Bankruptcy Regulated by State Statute.**

5. The priority of right as between a chattel mortgage of the bankrupt and the bankruptcy trustee is regulated by the law of the state in which bankruptcy proceedings are instituted.

**Chattel Mortgages—Title of Attaching Creditors Subject to Valid Prior Liens, of Which He had Notice.**

6. Notwithstanding Sections 10178, 10180, Or. L., as to priorities of chattel mortgages and attachment, the title and rights of an attaching creditor are subordinate to prior valid liens upon the attached property, of which he had actual knowledge, or sufficient notice to put him upon inquiry.

**Bankruptcy—Trustee Appointed During Pendency of Suit to Foreclose Unrecorded Chattel Mortgage Takes Subject to It.**

7. A trustee in bankruptcy, appointed under a petition filed during the pendency of proceedings to foreclose an unrecorded chattel mortgage, and after replevin has been instituted by mortgagee under Section 10183, Or. L., must be deemed to have acquired title with knowledge of the prior lien and subject thereto, provided it was not voidable as an unlawful preference.

**Usury—Notes Held Purged of Usury by Alteration and Collateral Agreement.**

8. Where notes bearing an illegal rate of interest offered by the debtor were later, at the request of the creditor, before he had received any benefits under them, changed to bear a legal rate and a collateral agreement in explanation of the changes was made, they were effectually purged of the taint of usury.

**Bankruptcy — Mortgages, Given With Knowledge by Creditor of Insolvency of Mortgagor and to Secure Part Indebtedness, Held Preferential.**

9. Where chattel mortgages were executed and given when mortgagee knew mortgagors were insolvent, and to secure past indebtedness, they amounted to unlawful preferences, void as against mortgagors' trustee in bankruptcy.

**Bankruptcy—Agreement to Execute Chattel Mortgage Held not Sufficiently Executed to Give a Lien.**

10. An agreement to give a chattel mortgage on a stock of automobile parts and accessories, followed by delivery of detailed list of the items composing the stock, was an executed agreement to give a chattel mortgage, not sufficient to establish lien that could be asserted against the trustee in bankruptcy.

ON REHEARING.

**Bankruptcy—Trustee in Bankruptcy may Set Up Usury Against Bankrupt's Contracts.**

11. A trustee in bankruptcy is entitled to set up the defense of usury against the contracts of the bankrupt.

**Usury—Elements of Usury Including "Corrupt Intent" Enumerated.**

12. To sustain the defense of usury, the party relying thereon must plead and prove: (1) A loan express or implied; (2) an understanding between the parties that the money loaned shall or may be returned; (3) that for such loan a greater rate of interest than is allowed by law shall be paid, or agreed to be paid; (4) corrupt intent, meaning that the parties must have knowingly agreed on a rate of interest greater than that allowed by law.

**Pleading—Answer Setting Up Usury Held Sufficient in Absence of Demurrer or Other Timely Objection.**

13. In the absence of a demurrer or other timely objection, answer setting up usury *held* sufficient.

**Pleading—Defective Statement of Elements of Usury in Answer Held Aided by Decree.**

14. Where a trustee in bankruptcy set up the defense of usury against certain contracts executed by the bankrupt, but failed expressly to allege that the contracts were entered into with corrupt intent to take more than the legal rate of interest, stating that the contracts were given secretly and that they were usurious, which was known to plaintiff, and that the rate of interest was subsequently reduced without consideration, *held,* that there was not an entire omission to state an essential element, but merely a defective statement thereof, which was aided by the decree and was therefore sufficient.

**Usury—Moral Obligation Under Contract Purged of Usury Supports Obligation to Pay Actual Debt With Legal Interest.**

15. To purge a contract of the taint of usury, the usurious agreement must be abandoned by the parties and the security canceled or surrendered, and when usury is thus eliminated the moral obligation of the borrower to pay the sum actually loaned with lawful interest is a sufficient consideration to support a new obligation to pay the actual debt with legal interest.

**Bankruptcy—Modification of Agreements Purging Them from Usury Held to Create an "Unlawful Preference."**

16. Where within twenty-four days of the filing of a petition in bankruptcy the bankrupt and his creditor attempted to modify certain usurious contracts by making an agreement reducing the interest to the legal rate, whereby the creditor's rights to the benefit of the security attached under the contract as legalized, the transaction amounted to an "unlawful preference" under the Bankruptcy Act (U. S. Comp. Stats., §§ 9585–9656).

**Bankruptcy—Contract Held not to Give Equitable Lien Antedating Preference Under Act.**

17. Where plaintiff advanced the purchase price of automobiles purchased by one who subsequently became a bankrupt, to enable

him to pay the manufacturer, the bankrupt agreeing to secure plaintiff by a lien upon the purchased cars, full payment being made upon the sale of each new car and nothing appearing as to a lien upon used cars taken in exchange, the contract was not such as to give rise to an equitable lien upon specific property so as to antedate a modification of a usurious contract based upon such advances, thereby depriving it of its character as a preference under the Bankruptcy Act (U. S. Comp. Stats., §§ 9585–9656).

From Lane: G. F. SKIPWORTH, Judge.

In Banc.

MODIFIED.

For appellant there was a brief over the name of *Mr. H. E. Slattery.*

For respondent there was a brief over the name of *Messrs. Young & Ray.*

McCOURT, J.—Plaintiff commenced this suit August 29, 1921, to obtain a decree declaring certain written instruments, executed in his favor by Ossman-McDonald Motor Car Company, a partnership, to be chattel mortgages covering the motor vehicles described in each of said instruments, and directing that each of such chattel mortgages be foreclosed, and that the personal property described therein be sold to satisfy the several sums of money alleged to be secured by such chattel mortgages and alleged by plaintiff to be due from the partnership.

Plaintiff at the same time commenced an action in replevin to obtain possession of the personal property covered by the several mortgages, as authorized by Section 10183, Or. L., and under and by virtue of the writ issued in that action, the sheriff on the twenty-ninth day of August 1921, levied upon and seized possession of all of the personal property described in the several instruments asserted by plain-

tiff to be chattel mortgages, which was then in the possession of the partnership. The possession thus taken by the sheriff has since been retained by him.

On September 9, 1921, the partnership, and Leslie H. Ossman and Wesley B. McDonald, the individuals composing it, were, by a decree of the District Court of the United States for the District of Oregon, adjudicated bankrupts, upon a petition showing liabilities of $30,140.15 and assets of $26,404.42, consisting of automobiles and accessories.

At the first meeting of the creditors of the bankrupts, the defendant, Herbert Roome, was appointed trustee in bankruptcy of the bankrupt estates, and on September 27, 1921, the said trustee was, by order of the Circuit Court, substituted as defendant for those originally made defendants in the suit. The trustee, in an answer filed by him, attacked the validity of the instruments sought to be foreclosed, on the grounds that the cars and other property described in the several instruments were owned by, and were in the possession of, Ossman-McDonald Motor Car Company at all times; that the instruments were not witnessed or acknowledged so as to entitle them to record, and none of them were ever filed and recorded, but were secretly given by the partnership, and secretly received and held by plaintiff, without any notice to, and without the knowledge of, any of the creditors of the partnership; that the partnership was allowed to retain the possession of the property named therein, and to sell the same in the regular course of business, without any accounting of the proceeds therefrom, and that the creditors of the partnership extended credit to the company without any knowledge of the existence of the instruments held by plaintiff, or of the indebted-

ness represented thereby; the trustee further alleged that each of the instruments sued on by plaintiff, except those set forth in plaintiff's cause of suit 2, 7 and 11, respectively, was given without any present consideration and for the purpose of creating a preference in favor of plaintiff.

A trial was had upon the issues presented by the pleadings, and the court gave a decree declaring the instruments sued upon by plaintiff to be invalid and of no effect, as against the trustee in bankruptcy, and awarded possession of the personal property to the trustee for the purpose of liquidation in the regular course of bankruptcy. Plaintiff appeals.

The complaint contains thirteen causes of suit. Omitting dates, amounts, rate of interest and description of motor vehicles, each of the first eight causes of suit is based upon a written instrument substantially as follows:

"———                        Eugene, Oregon, ———, 19—.

"For value received, I promise to pay to the order of C. L. Teshner at their office in the City of Eugene, Oregon, the sum of —— DOLLARS, in Gold coin of the United States of the present standard value, together with interest thereon in like Gold coin at the rate of —— per cent per annum, said interest to be paid at maturity. I promise to pay said sum in installments as follows: On demand until said principal sum and interest is fully paid. Upon failure to pay any installment when due, the whole amount of both principal and interest shall become at once due and collectible. And if suit or action be instituted to collect this note or any part thereof, I promise to pay such additional sum as the court may adjudge reasonable as attorney's fees in such suit or action.

"This note is given as the purchase price of one —— Automobile bearing factory No. —— and the

express condition of the sale and purchase of the same is such that the title, ownership, possession and right of possession, does not pass from the said C. L. Teshner until this note and all the interest thereon is paid in full, and in case of default of the undersigned in the making of the payments hereinbefore mentioned, or any of them, time being of the essence thereof, or in case of misuse or abuse of the said Automobile whereby the value of the same is in the opinion of said C. L. Teshner materially lessened, then the said C. L. Teshner, their agents or assigns, have full power to take possession of the said Automobile, to declare this note due, and in such case I authorize them to sell the said automobile at public or private sale for the best price that may be obtained for same, and to apply the proceeds, after deducting all necessary expense, to the payment of the sum due at such time upon this note and any balance then remaining unpaid I hereby acknowledge as a just debt which I promise and agree to pay.

"I specifically agree that I will not sell, loan, pledge or otherwise dispose of said Automobile nor will I suffer any lien or attachment to be made or levied upon same and in event I do so, I agree that same shall constitute a waiver of all my right in and to the same and that the said C. L. Teshner, or their agents or assigns, may thereupon declare this note due, repossess themselves of the said Automobile and to proceed to sell the same and apply the funds received from such sale as in the foregoing paragraph mentioned.

"(Sgd.)    OSSMAN & McDONALD.
"By L. H. OSSMAN."

The tenth cause of suit is based upon an instrument designated as an executory contract of sale, different in form, but of the same legal effect as that set out above.

The dates, principal, rate of interest and motor vehicle named in each instrument follow in the order they appear in the complaint.

| Date. | Amount. | Interest. | Description of vehicle. | New or used car. |
|---|---|---|---|---|
| July 22, 1921. | $1200.00 | 10% per annum. | Cole 8–4 passenger, No. 56383. | Used. |
| April 13, 1921. | $1393.95 | 8% " | Nash 4, touring car, No. 1696. | New. |
| May 8, 1921. | $ 958.78 | 10% " | Nash 4, touring car, Serial No. 101307. | Used. |
| Aug. 13, 1921. | $1201.28 | 10% " | Nash 4–5 passenger, No. 2318. | New. |
| July 8, 1921. | $ 200.00 | 10% " | Reo Delivery car, No. 3RF17. | Used. |
| Aug. 3, 1921. | $ 400.00 | 10% " | Dodge, No. 172393. | Used. |
| May 9, 1921. | $1350.00 | 10% " | Nash 5–passenger, No. 2346. | New. |
| May 6, 1921. | $ 247.97 | 10% " | Henderson motorcycle, No. K1001. | Used. |
| June 11, 1921. | $ 700.00 | 10% " | Maxwell, Sedan, No. 239551. | Used. |

Plaintiff's rights under the foregoing instruments, as against the trustee in bankruptcy, depend upon the facts established by the evidence.

The Ossman-McDonald Motor Car Company, hereinafter referred to as the firm, was engaged in selling automobiles at retail; the firm maintained a salesroom, with repair-shop attached, in Eugene, Oregon, where it sold new cars purchased from the manufacturer, and also used cars taken in exchange upon the sale of new cars.

About August 1, 1920, the firm entered into an arrangement with plaintiff, whereby the latter agreed to advance and loan to the firm, funds for the purchase of new automobiles to be placed in stock and sold by the firm.

In purchasing automobiles from the factory, the firm was required to pay for the cars upon arrival;

the automobiles were usually shipped in carload lots of four automobiles. The manufacturers attached to the bill of lading for each shipment, a draft for the purchase price of the cars. The firm was required to pay such draft before unloading the automobiles from the railway car. The agreement between plaintiff and the firm was that plaintiff should, upon the receipt of a shipment of automobiles, advance to the firm the amount of the draft attached to the bill of lading, and thus enable the firm to receive and unload the automobiles.

It was agreed that thereupon the firm should place the automobiles covered by the bill of lading upon the floor of its salesroom, and dispose of them in the regular course of trade, and when a car was sold, the part of plaintiff's loan or advancement represented by the factory price of the automobile sold, should be repaid to plaintiff, with interest at 8 per cent per annum from the date of that advancement; it was further agreed that plaintiff in the meantime should have a lien, in the nature of a chattel mortgage, upon the automobiles for which he had advanced the purchase price, with the right, upon default in payment, to take possession of the automobiles, with power of sale to satisfy plaintiff's claim.

Pursuant to the agreement mentioned, plaintiff advanced to the firm, for the purchase of new automobiles, numerous sums of money, among which were the following:

August 2, 1920, carload of 4 new Nash cars, factory price of each, $1525.00.....................$6,100.00
Sept. 2, 1920, carload of 4 new Nash cars, factory price of each, $1540.00.....................$6,160.00
April 13, 1921, 1 new Nash-4 touring car.................$1,393.95
May 9, 1921, carload of 4 new Nash cars, factory price of each, $1350.00.....................$5,400.00
August 13, 1921, 1 new Nash roadster......................$1,201.25

To evidence the transaction, both as to the obligation of the firm and the agreement to give plaintiff security for the money advanced by him, the firm in each instance of the two advances first above mentioned, executed and delivered to plaintiff a promissory note, which included terms providing for a pledge to plaintiff of the automobiles included in the purchase, as security for the payment of the note.

In connection with the subsequent advances mentioned, the firm executed and delivered to plaintiff a combined note and conditional sales contract in the form above set out.

Plaintiff's causes of suit 2, 3 and 7, each relate to a new car and represent money advanced by plaintiff to purchase the same.

In making sales of automobiles upon which plaintiff claimed a lien, the firm frequently was required to take a used car in exchange as part payment for the car sold, in which case the firm was unable to pay to plaintiff, in full, the sum of money required to secure a release of the car sold from plaintiff's claim of lien; to enable the firm to make the sale, plaintiff accepted the cash received from the buyer in part payment of his claim, and accepted as security for the balance remaining unpaid, the used car taken in exchange by the firm; and thereupon plaintiff released from his lien the car which had been sold. In each instance the substituted security, and the indebtedness secured thereby, was covered by a promissory note and conditional sales contract, as in the case of loans made by plaintiff for the purchase of new cars. A transaction such as that last described is embraced in each of plaintiff's causes of suit relating to a used car.

The firm remained in possession of all of the cars covered by the several instruments, and offered all of the cars for sale in the ordinary course of trade. Plaintiff appeared at the firm's place of business almost daily and required the firm to, and it did, account promptly for sales made, whether for cash, or for cash and used cars in exchange.

1. The evidence clearly establishes that the foregoing transactions between plaintiff and the firm were made in good faith, upon sufficient consideration and without intent to defraud creditors or purchasers. In no instance did the transfer have the effect of diminishing the assets of the firm. The several instruments were intended as chattel mortgages by the parties, and are claimed by the plaintiff, and conceded by defendant, to be chattel mortgages; each was given to secure plaintiff, either for a present loan or for the release of automobiles upon which he had a valid lien.

"A surrender of a valid lien is of itself a present consideration to the extent of the security released." *Bank* v. *Jones,* 242 Fed. 821, 826 (155 C. C. A. 409).

The chattel mortgages given by the firm to plaintiff were valid between the parties, notwithstanding the oral understanding, whereby plaintiff allowed the firm to sell and dispose of the mortgaged property, upon condition that the firm should keep a strict account of sales, and promptly pay the same over to plaintiff, that condition having been observed by the parties: *Currie* v. *Bowman,* 25 Or. 364 (35 Pac. 848); *Sabin* v. *Wilkins,* 31 Or. 450 (48 Pac. 425, 37 L. R. A. 465); *Kenney* v. *Hurlburt,* 88 Or. 688 (172 Pac. 490, 173 Pac. 158, Ann. Cas. 1918E, 737, L. R. A. 1918E, 652).

2. A chattel mortgage given as security for money advanced to enable the debtor to purchase the property covered by the chattel mortgage does not constitute a preference under the Bankruptcy Act: Collier on Bankruptcy (12 ed.), p. 886.

3. Nor does the substitution of securities create a preference where the estate of the debtor is not diminished by the exchange: Collier on Bankruptcy (12 ed.), p. 887; Black on Bankruptcy (3 ed.), § 586; *Sawyer* v. *Turpin,* 91 U. S. 114, 120 (23 L. Ed. 235, see, also, Rose's U. S. Notes); *Matter of Star Spring Bed Co.,* 257 Fed. 176; *Ernst* v. *Mechanics' & Metals National Bank,* 201 Fed. 664, (120 C. C. A. 92); *Lakeview State Bank* v. *Jones,* 242 Fed. 821 (155 C. C. A. 409); *In re Reese-Hammond Fire Brick Co.,* 181 Fed. 641 (104 C. C. A. 371); *Bailey* v. *Baker Ice Machine Co.,* 239 U. S. 268 (60 L. Ed. 275, 36 Sup. Ct. Rep. 50).

4. As against a chattel mortgagee not in possession of the mortgaged property, and whose mortgage is not recorded, the trustee in bankruptcy stands in the position of an attaching creditor having obtained a lien by levy of an attachment or execution as and of the date the petition in bankruptcy was filed: *First Nat. Bank of Union* v. *Wegener,* 94 Or. 318, 334 (181 Pac. 990, 186 Pac. 41); *Bank* v. *Jones,* 40 Am. Bankr. Rep. 148 (242 Fed. 821, 155 C. C. A. 409).

5. The priority of right as between such chattel mortgagee and the trustee in bankruptcy is regulated by the law of the state in which the bankruptcy proceedings are instituted: *In re Floyd-Scott Co.,* 224 Fed. 987 (35 Am. Bankr. Rep. 463).

6. Under the state statutes, a chattel mortgage not accompanied with immediate delivery and actual

and continued change of possession of the property mortgaged, or which shall not be recorded, is void as against subsequent purchasers in good faith and for a valuable consideration of the same personal property (Section 10178, Or. L.), and an attaching creditor, from the date of the attachment, is deemed such a purchaser: Section 10180, Or. L.

Notwithstanding the statutory declaration last referred to, it is firmly established in this state that the title and all rights of an attaching creditor are subordinate to prior valid liens upon the attached property, of which he had actual knowledge or sufficient notice to put him upon inquiry: *Boehreinger* v. *Creighton,* 10 Or. 42; *Riddle* v. *Miller,* 19 Or. 468 (23 Pac. 807); *Dimmick* v. *Rosenfeld,* 34 Or. 101 (55 Pac. 100); *Flegel* v. *Koss,* 47 Or. 366 (83 Pac. 847); *Saling* v. *First Nat. Bank of Tillamook,* 93 Or. 237, 242 (182 Pac. 140). Also *Bailey* v. *Hickey,* 99 Or. 251 (195 Pac. 372), in which the earlier cases to the same effect are collected.

In *Riddle* v. *Miller,* 19 Or. 468 (23 Pac. 807), the court said:

"The statute has materially enlarged the creditor's right under the proceedings, in the manner indicated; but the legislature did not intend. thereby to give to a creditor, by virtue of such levy or the docketing of a judgment, any right as against an outstanding equity known to him at the time his lien attached. Acts of that character have always been construed as giving to a creditor, under such circumstances, such rights only as he would acquire under a voluntary sale of the property to him by the debtor for a valuable consideration. * * where a creditor resorts to such a proceeding who is informed of the outstanding equity, or of facts sufficient to put him on an inquiry by which he could ascertain the existence

of such equity, the lien he secured thereby will be subject to it."

7. At the date the petition in bankruptcy was filed, and for ten days prior thereto, the motor vehicles in question were in the possession of the sheriff, held by the latter under and by virtue of a writ of replevin, the issuance of which was obtained by plaintiff in aid of his claims under the chattel mortgage held by him, and to enable him to foreclose the same. This suit was pending at and during the same period, and had for its declared purpose the foreclosure of those chattel mortgages and the sale of the identical motor vehicles held by the sheriff, to satisfy the several debts secured by said chattel mortgages. It is manifest that no purchaser of the property from the bankrupts on the date the petition in bankruptcy was filed could successfully assert the rights of a purchaser in good faith for a valuable consideration, as against the claims of plaintiff.

This court, in the case of *Bank* v. *Wegener,* 94 Or. 318, 337 (181 Pac. 990, 186 Pac. 41), held that where a suit to foreclose an unrecorded chattel mortgage, valid between the parties, had been commenced before, and was pending, at the time the petition in bankruptcy was filed, the trustee in bankruptcy acquired title to the mortgaged property, with notice of the lien of such chattel mortgage, and subject thereto, provided the mortgage was not voidable as a preference. That case is decisive of the question under consideration.

8. Each of eight of the instruments sued upon by plaintiff, the first of which was given May 6, 1921, originally provided for interest at the rate of 12 per cent per annum. Defendant complains that all

of the instruments mentioned were, and are, usurious, and that "plaintiff has forfeited all right to relief thereunder."

Plaintiff testified, in which testimony he was corroborated by both Ossman and McDonald:

"The first time that the 12 per cent appeared was in my absence when I was out of town. When I returned I found the note bearing 12 per cent, and I said to Mr. Ossman, 'I don't see how you can pay that amount. That is more than it should be.' 'O,' he said, 'That's all right. It is worth that to us.' * * it must have been along in the early summer some time. No, I suppose it was along in the spring some time. I don't know just when it was. * * I was out of town at the time.

"Q. Had you had any talk with him about it before that? A. No; that was the first time that I had received a renewed note, and this renewed note bore 12 per cent. This note was given to my wife in my absence, and when I returned I brought the matter up with Mr. Ossman.

"Q. He just voluntarily agreed to give you 12 per cent? A. Absolutely. Q. You never had any talk with either one of them before that? A. No, sir. Q. You accepted the 12 per cent? A. Yes. Q. And these additional notes at 12 per cent? A. Yes, he said it was worth that much to him. * *

"Q. This instrument O bears date August 18th. A. At that time I found it was unlawful to collect 12 per cent interest and I immediately had this fixed up."

Exhibit "O" is as follows:

"Certain notes outstanding between the parties hereto bearing a rate of interest in excess of 10 per cent, now it is agreed between the parties hereto, no interest having as yet been paid on any of said notes, that said interest on all such notes shall be reduced to 10 per cent per annum from date, and said notes are hereby purged from all claim for

interest in excess of 10 per cent per annum from date of said several notes.

"August 18, 1921.

"(Sgd.)   OSSMAN-McDONALD MOTOR CAR Co.
           "By L. H. OSSMAN.
           "By W. B. McDONALD.
     "(Sgd.)   C. L. TESHNER."

After signing Exhibit "O," the parties changed the interest rate in the notes from 12 to 10 per cent by interlineation and erasure. It is claimed by plaintiff that the instruments were purged of the taint of usury by the agreement contained in the above writing and by the allegation of the instruments by mutual consent to conform to that agreement.

In 27 R. C. L. 251 we read:

"Though the security given for a debt is tainted with usury it may be purged by the abandonment of the usurious contract and the execution of a new obligation for the amount of the actual debt free from the usury of the old and bearing only legal interest. If the lender will expunge the usury, and the borrower voluntarily assents to repay the sum loaned with lawful interest, it is an act of justice forbidden by no principle of public policy, which constitutes a good consideration for a new contract."

To the same effect see 39 Cyc. 1002.

It appears from the evidence that no interest had been paid upon any of the obligations which provided for an unlawful rate of interest, and that no part of the principal upon the same had been paid, and that therefore the plaintiff did not retain, nor had he received, any benefits under the prohibited agreement. Under the circumstances we think the act of the parties was sufficient to purge the contracts of the taint of usury.

9. To have that effect, however, the several obligations must be regarded and treated as new contracts. In that view, they were executed and given when plaintiff knew the firm was insolvent, and to secure past indebtedness. On that account, the transactions amounted to unlawful preferences under the Bankruptcy Act, and were void as against the claims of the trustee.

10. Plaintiff by his eighth cause of suit, and also by causes of suit, 9 to 13 inclusive, attempts to establish a chattel mortgage upon the stock of automobile parts and accessories belonging to the firm; he alleges that the firm promised and agreed to execute and deliver to plaintiff a chattel mortgage upon its said stock as a substitute for security either released by plaintiff, as set forth in some of the causes of suit mentioned, or as additional security upon indebtedness of the firm to plaintiff, for which plaintiff held some security, as set forth in some of said causes of suit.

In furtherance of the agreement last mentioned the firm, on August 3, 1921, delivered to plaintiff a paper describing in general terms the stock of parts and accessories, and later delivered to plaintiff a detailed list of the items making up said stock of parts and accessories. This latter transaction did not amount to a chattel mortgage. At most, it was an unexecuted agreement to give a chattel mortgage, and plaintiff did not thereby, or by this suit, acquire any claim or lien upon the stock of parts and accessories, as against the trustee in bankruptcy.

Plaintiff is entitled to prevail in this suit upon his second and seventh causes of suit. No evidence of the reasonable value of attorney's fees was given, and none will be allowed. As the automobiles

covered by the chattel mortgages of the plaintiff, described in the causes of suit mentioned, have been sold, and the proceeds are in the custody of the sheriff of Lane County, pursuant to a stipulation of the parties, so much of the proceeds of the sale of each of the machines shall be applied upon the particular mortgage secured thereby, as shall be necessary to satisfy the same, and the balance, if any, paid to the trustee in bankruptcy.

Except as indicated, the decree of the Circuit Court is affirmed. A decree will be entered in this court in accordance with this opinion.            AFFIRMED.

---

Former opinion sustained on rehearing January 30, 1923.

## ON REHEARING.

### (212 Pac. 473.)

For appellant there was a brief and oral argument by *Mr. H. E. Slattery.*

For respondent there was a brief over the name of *Messrs. Young & Ray,* with an oral argument by *Mr. L. L. Ray.*

In Banc.

McCOURT, J.—The former opinion on this appeal (210 Pac. 160), was reached upon submission of the cause upon briefs under Rule 18 of this court. (173 Pac. x.) After that opinion was handed down, a rehearing was granted, and the cause was argued orally by the parties.

Plaintiff for the first time now objects that the plea of usury, interposed by defendant as against those written instruments sued upon by plaintiff,

each of which stipulated for the payment of interest at 12 per cent per annum, is insufficient to raise that defense. The pleadings herein are rather informal, and neither plaintiff nor defendant pleaded with technical exactness. No objections were raised in the Circuit Court, by either party, to the sufficiency of the pleadings, and evidence was introduced upon the trial in that court without particular reference to the pleadings.

The specific objection that plaintiff now makes to the attempt of defendant to plead usury is that defendant failed to allege in his answer that the several contracts, set out in plaintiff's complaint and alleged by defendant to be usurious, were entered into with a corrupt intent upon the part of plaintiff to take more than the legal rate of interest for the use of the several sums of money loaned.

11. Defendant, as trustee in bankruptcy, is entitled to set up the defense of usury against the contracts of the bankrupt: 39 Cyc. 1066: *In re Stern,* 144 Fed. 956, 958 (76 C. C. A. 10); *In re Kellogg,* 121 Fed. 333 (57 C. C. A. 547); *In re Pittock,* Fed. Cas. No. 11,189 (2 Sawy. 416).

Corrupt intent, as an element of usury, means that the parties must have knowingly agreed upon a rate of interest greater than that allowed by law: *Investment Assn.* v. *Stanley,* 38 Or. 319, 342 (63 Pac. 489, 84 Am. St. Rep. 793, 58 L. R. A. 816).

12. It is the universal rule that, in order to sustain the defense of usury, the party relying thereon must plead and prove: (1) A loan, express or implied; (2) An understanding between the parties that the money loaned shall, or may be, returned; (3) That for such loan a greater rate of interest than is allowed by law shall be paid, or agreed to be

paid, as the case may be; and (4) A corrupt intent . to take more than the legal rate for the use of the sum loaned: Tyler on Usury, p. 110; Webb on Usury, §§ 18, 397; *Balfour* v. *Davis,* 14 Or. 47, 52 (12 Pac. 89); *Farrell* v. *Kirkwood,* 69 Or. 413, 417 (139 Pac. 110).

The fourth element may be implied, if all the others are expressed upon the face of the contract. The other three must be established by sufficient evidence: Webb on Usury, § 18.

Plaintiff, in his complaint, declares upon eight written instruments, each of which, when executed and delivered to plaintiff, stipulated for the payment of interest at the rate of 12 per cent per annum upon a sum of money loaned by plaintiff to defendant's bankrupts.

In the leading case of *United States Bank* v. *Waggener,* 9 Pet. 378 (9 L. Ed. 163, 171, see, also, Rose's U. S. Notes), Mr. Justice STORY discussing usury laws, said:

" * * to constitute usury within the prohibitions of the law, there must be an intention knowingly to contract for or take usurious interest; for if neither party intend it, but act *bona fide* and innocently, the law will not infer a corrupt agreement. Where, indeed, the contract upon its very face imports usury, as by an express reservation of more than legal interest, there is no room for presumption; for the intent is apparent, *res ipsa loquitur.*"

Regarding contracts for the payment of money, which expressly stipulate for the payment of interest at a rate in excess of that allowed by statute, an able text-writer says:

"If it be the real intention of the parties to receive or reserve a given rate of interest, and that rate turns out to be usurious, the transaction will be re-

garded as usury, whether the parties knew the interest to be usurious or not. * * No error of the parties, as to the effect of the transaction under the law, can give validity to a contract made in violation of the law." Tyler on Usury, p. 104.

To the same effect, see Webb on Usury, § 33; 27 R. C. L. 222; *Holmes* v. *Williams,* 10 Paige Ch. (N. Y.) 326 (40 Am. Dec. 250); *Plyler* v. *McGee,* 76 S. C. 450 (57 S. E. 180, 121 Am. St. Rep. 950); *Fielder* v. *Darrin,* 50 N. Y. 437.

The facts set forth in plaintiff's complaint disclosed that, as security for the payment of eight separate sums of money loaned by plaintiff to the bankrupts, plaintiff had, at the time each loan was made, taken and received from the borrowers a written instrument stipulating for the payment of interest at the rate of 12 per cent per annum upon the particular sum involved in the transaction; that each of the instruments had been in the possession of plaintiff from the date of the delivery of the same to him, and that he still held possession thereof. The complaint also states that the rate of interest stated in each of the writings should have been 10 per cent, and that upon a date subsequent to the receipt of the last of such instruments, a writing, set out in the complaint, was executed by plaintiff and the bankrupts for the purpose of reducing the stipulated interest from 12 per cent to 10 per cent, in which writing it was recited—

" * * that said interest on all such notes shall be reduced to 10 per cent per annum from date, and said notes are hereby purged from all claim for interest in excess of 10 per cent per annum from date of said several notes."

The complaint was evidently designed to anticipate the defense of usury, by showing that written in-

struments, which were invalid when made because of the reservation of illegal interest, had been rendered valid by a subsequent agreement whereby they were purged of the illegal taint of usury. But, after setting up facts showing the presence of usury in the contracts sued upon, as originally made, the complaint fails to allege any mistake of fact or inadvertence that might deprive the several transactions of the element of usury, which was present in them at the time of their consummation.

Usury need not be pleaded, if the fact of usury appears from the complaint: Webb on Usury, §§ 399, 409.

Defendant's answer does not expressly allege that the reservation of excessive interest was made knowingly and intentionally by the parties, but it does allege that the instruments sued upon represent eight separate transactions, extending over a period of more than three months, and that at the conclusion of each transaction, one of the contracts expressly stipulating for the payment of 12 per cent interest, was delivered by the bankrupts to plaintiff. This allegation, showing repeated transactions, identical in character, each reserving in writing interest at the same illegal rate, in itself imports knowledge of the terms of the several instruments and the rate of interest reserved therein and an intention to take the same.

Defendant further alleges that the instruments were secretly given by the bankrupts, and secretly received by plaintiff, and—

"That said instruments were, and are, usurious, which fact was known to the plaintiff at the time of the execution, and the plaintiff has forfeited all right to relief thereunder."

Defendant also alleges that the agreement of the parties to reduce the interest rate from 12 to 10 per cent was made, without consideration whatever therefor.

The evidence, received without objection, clearly establishes that it was the deliberate intention of the bankrupts to pay plaintiff 12 per cent interest upon the several sums evidenced by the contracts under discussion, and that it was likewise the intention of the plaintiff, knowingly formed, to receive interest at the rate of 12 per cent thereon. The excuse offered by plaintiff for making the illegal contracts is that he did not know that 12 per cent is an illegal rate of interest.

13. In the absence of a demurrer or other timely objection to the answer, it is sufficient: *Maule* v. *Crawford*, 14 Hun (N. Y.), 193; *Anderson* v. *Smith*, 108 Mich. 69 (65 N. W. 615); *Waldner* v. *Bowdon State Bank*, 13 N. D. 604 (102 N. W. 169, 3 Ann. Cas. 847); *Wagoner Nat. Bank* v. *Welch*, 7 Ind. Ter. 259 (104 S. W. 610); *Siesel & Bro.* v. *Harris*, 48 Ga. 652.

14. There was not an entire omission to state an essential element of the defense, but a defective statement thereof, which is aided by the decree: *Creecy* v. *Joy*, 40 Or. 28, 33 (66 Pac. 295); *Lindstrom* v. *National Life Ins. Co.*, 84 Or. 588, 596 (165 Pac. 675), in which many earlier Oregon cases are collected; *Winters* v. *Privett*, 86 Or. 501, 506 (168 Pac. 942).

15. To purge a contract of the taint of usury, the usurious agreement must be abandoned by the parties, and the security incident thereto, canceled or surrendered: Case note, 13 A. L. R. 1233; 27 R. C. L. 251. When usury is thus eliminated from the contract, the moral obligation of the borrower to pay the principal sum actually loaned, with lawful inter-

est, is then a sufficient consideration to support and render valid and enforceable a new obligation to pay the actual debt with legal interest: *Kilbourn* v. *Bradley,* 3 Day (Conn.), 356 (3 Am. Dec. 273). This may be accomplished by a modification of the original contract (*Phillips* v. *Columbus City Bldg. Assn.,* 53 Iowa, 719 (6 N. W. 121), in which case the new contract takes effect and becomes operative as to third parties as of the date it is made: *Warwick* v. *Dawes,* 26 N. J. Eq. 549.

16. The modified contracts which plaintiff seeks to foreclose, were made less than four months (twenty-four days), prior to the date the petition in bankruptcy was filed. Regarded as free from the usury with which they were tainted previously, plaintiff's right to the benefit of the security evidenced by those contracts attached upon the date of the modifying agreement, viz.: August 18, 1921, and at that time diminished the assets of the bankrupts to the extent of the value of those securities. The transaction amounted to an unlawful preference under the Bankruptcy Act, as we pointed out in our former opinion.

17. Plaintiff insists, however, that the liens created by the modified contract should be construed as having been given pursuant to a valid prior agreement to execute the same, made when the money was advanced, in which case it is contended, that a transfer of property or giving of security does not constitute an illegal preference, though it takes place at a time when the debtor is insolvent, and within four months prior to his bankruptcy: Black on Bankruptcy (1922), § 585.

The evidence established an agreement whereby plaintiff undertook to advance the purchase price of automobiles purchased by the bankrupts for the

purpose of enabling the latter to pay the draft of the manufacturer which accompanied the bill of lading of each shipment of new cars; also that in each instance the bankrupts agreed to, and did, secure the sum advanced by plaintiff pursuant to that agreement by a lien upon the purchased cars.

There is no evidence of an agreement between plaintiff and the bankrupts relative to liens or chattel mortgages upon used cars which the bankrupts might take in exchange upon the sale of a new car. The contract shown by the evidence required payment in full to plaintiff, upon the sale of a new car, of the amount advanced by plaintiff for the purchase thereof. The evidence does establish that in the course of business the bankrupts executed and delivered to plaintiff several chattel mortgages, each of which covered a used car taken in exchange by the bankrupts, as part of the sale price of a new car, but so far as appears from the evidence, every such chattel mortgage may have been the result of negotiations arising upon the occasion, and without reference to any prior agreement. No evidence appears in the record of any prior agreement to substitute specific automobiles as further security, upon the failure of the bankrupts to make payments as agreed.

Black on Bankruptcy, Section 585, states the rule invoked by plaintiff, as follows:

"The true doctrine appears to be that if the promise or agreement was of such a specific nature and related to such specific property as to give rise to an inchoate or equitable lien (in advance of its execution) then the creation of a specific lien at a later time, in accordance with the prior promise, will not violate the bankruptcy law. But these conditions are not met by a general parol agreement, entered into when the debt was contracted, not pledg-

ing any specific property * * ." Citing: *Johnson* v. *Root Mfg. Co.*, 241 U. S. 160 (60 L. Ed. 934, 38 Sup. Ct. Rep. 520); *Sabin* v. *Camp*, 98 Fed. 974.

Measured by the foregoing rule, there was no contract between the parties which gave rise to an equitable lien upon specific property, or which deprives the transfers in question of the character of voidable preferences under the Bankruptcy Act.

Upon the rehearing defendant renewed, and vigorously argued, the contentions made in his briefs, that all the chattel mortgages held by plaintiff are void as to the creditors of the bankrupts and as to the defendant, who, as trustee in bankruptcy, is entitled to enforce the rights possessed by such creditors. Those contentions involve the questions decided in our former opinion, and a re-examination of the same satisfies us that they were correctly decided.

This disposes of all the debatable matters presented upon the rehearing, and in our opinion they do not alter the conclusions expressed in our former decision, and we adhere thereto.

FORMER OPINION SUSTAINED ON REHEARING.