Argued October 4, reversed November 13, 1928, rehearing denied January 15, 1929.

## CREDIT SERVICE COMPANY *v.* GORDON FURNEY ET AL.

(271 Pac. 738.)

For appellant there was a brief over the name of *Messrs. Crum, Murdoch & Dusenbery*, with an oral argument by *Mr. Verne A. Dusenbery*.

For respondent there was a brief and oral argument by *Mr. R. G. Lenske*.

ROSSMAN, J.—January 7, 1926, the plaintiff brought this action against the defendant to recover judgment in the sum of $495.78; at the same time it procured the issuance of a writ of attachment and a writ of garnishment; the latter was served upon E. C. Dunning, whom we shall hereafter refer to as the garnishee, and who made a return that he possessed nothing belonging to the defendant. March 2, 1926, the plaintiff filed the allegations against the garnishee which constitute the foundation of this proceeding; in these he alleged that when the writ of garnishment was served upon the garnishee, the latter had in his possession, as property of the defendant, all of the equipment which comprised a restaurant. The facts concerning the restaurant, material to the issues which we shall determine, are that the defendant for some months had owned this establishment; September 3, 1925, he executed an installment note for the sum of $1,560, payable to the City Investment Company, which he secured by

a chattel mortgage covering the equipment constituting the restaurant. This chattel mortgage was properly recorded. One of its terms made provision:

" * * In case default shall be made in the payment of said promissory note or any part thereof, * * or if said property * * be seized or attached or abandoned or levied upon or sold or assigned or attempted to be sold or assigned or default in the payment of the rent on the premises in which said property is located, the said promissory note shall at once become due and payable and it shall and may be lawful for, and the said mortgagor or assigns does hereby authorize and empower the said mortgagee or assigns * * to enter the place above named * * and take or carry away the said goods and chattels, and sell and dispose of the same at public or private sale, with or without notice to the said mortgagor or assigns, or * * and out of the moneys arising therefrom to retain and pay the said sum above mentioned and interest as aforesaid and all charges touching the same and include a reasonable sum as attorney's fees, rendering the overplus, if any, unto the said mortgagor or assigns. * * "

A few days after the execution of the above mortgage the garnishee, as landlord, and the defendant, as tenant, executed a lease covering the real property where the restaurant was situated; one of its provisions was the following:

"It is understood and agreed that the lessor shall have a lien upon any and all furnishings and equipment now in or to be placed in said premises during the term of this lease to secure the rental provided herein, and that none of the same shall be removed therefrom without the consent of the lessor."

After the lease had been in effect approximately three months, the defendant became in arrears in the payment of rent to the extent of $600. A few days

thereafter, that is, January 3, 1926, he defaulted in one of the monthly installment payments upon the aforementioned promissory note. As the unpaid rent was accumulating and the defendant was apparently unable to discharge it, a series of conferences took place between himself and the garnishee; the Circuit Court found that they culminated in the execution of a bill of sale by the defendant to the garnishee conveying to the latter all the equipment constituting the restaurant; this bill of sale was executed November 28, 1925. At approximately the same time the defendant abandoned possession of the restaurant, and the garnishee being interested as landlord in keeping the place in operation, went into possession. The evidence is clear that the garnishee paid nothing for this bill of sale; the unpaid rent apparently constituted the sole consideration upon which this instrument was based. The lower court found: "That garnishee herein failed to demand and failed to receive from defendant five days before the consummation of said sale, transfer and assignment, and at least five days before paying or delivering to defendant the purchase price, a written statement" setting forth the names of the creditors of the restaurant. It made no finding, however, as to what purchase price the garnishee paid. The plaintiff contends that since the execution of this bill of sale was not preceded by a compliance with the Bulk Sales Act the property was subject to seizure as assets of the defendant. Without subscribing to the conclusion that such a transfer of title required compliance with the Sales in Bulk Act, we shall proceed on the hypothesis that the transaction was defective in the particulars plaintiff suggests. The circumstances present, therefore, when the writ of garnishment

was served were that the provisions of the chattel mortgage had been breached through the nonpayment of an installment upon the note. There also had occurred the issuance of the writs of attachment, and of garnishment in an endeavor to seize this property. The mortgagor had actually abandoned this property; prior to doing so he had neglected to pay his rent, and had executed a bill of sale which had as its subject matter the mortgaged property. January 9, 1926, the Surety Mortgage Company, as owners of the note and chattel mortgage, proceeded to foreclose. At that time there was unpaid upon the mortgage the sum of $1,100 and interest. A notice was prepared and served January 9th upon interested parties, including this plaintiff. This notice recited the intention of the mortgage company to foreclose, identified the mortgage, set forth the amount due, and stated that on the nineteenth day of January, 1926, at 11 A. M., upon the premises of the restaurant, it would sell the property at private sale. At the appointed time the sale was held and Mr. Guy Lee purchased the property for the amount due upon the mortgage. Still later the restaurant was sold to the present owner who is continuing to conduct the business. The defendant contends that this foreclosure terminated whatever liability existed under the garnishment, if any ever did exist. It will be observed that when the property was attached it was encumbered with an overdue mortgage, the validity of which no one disputes.

The plaintiff contends that (1) the foreclosure was not a valid one, (2) that the restaurant equipment was worth more than the amount of the mortgage debt, and (3) that the garnishee made a false return

when he certified that he possessed nothing belonging to the defendant.

1. It was not until January 8, 1927, that the plaintiff obtained its judgment against the defendant. At that time the mortgage had been foreclosed, the tenant no longer retained any interest in the aforementioned property, and the new owner, a Mrs. Curtis, was in possession of it. In the plaintiff's (respondent's) brief we find this statement: "Respondent, however, concedes that if a valid foreclosure of the mortgage upon the property had taken place respondent's rights against the property itself became nil." The above statement is well justified by the authorities: 28 C. J. 86; 12 R. C. L. 781, 785; *Lyon* v. *Ballentine*, 63 Mich. 97 (29 N. W. 837, 6 Am. St. Rep. 284); *Bragdon* v. *Bradt*, 16 Colo. App. 65 (64 Pac. 248); *Booth* v. *Gish*, 75 Iowa, 451 (39 N. W. 704). We have carefully examined the evidence and find nothing which would justify us in holding that the foreclosure was invalid. Upon the other hand we find that the foreclosure was conducted in the manner authorized by law: 1923 Sess. Laws, 189.

As was said in *Teshner* v. *Roome*, 106 Or. 382 (210 Pac. 160, 212 Pac. 473), "the title and all rights of an attaching creditor are subordinate to prior valid liens upon the attached property of which he had actual knowledge or sufficient notice to put him upon inquiry." See, also, *Williams* v. *Gallick*, 11 Or. 337 (3 Pac. 469). Since the foreclosure deprived the defendant of all his interest in the attached property, the garnishee's hands were empty when the judgment against the defendant was rendered. Thus the plaintiff was entitled to receive nothing from the garnishee. In fact when the plaintiff entered his judgment against the defendant he made no mention

of the attachment and garnishment, as is suggested by Section 308, Or. L.; this omission was obviously due to the fact that there remained nothing to sell. Nothing in this decision is out of harmony with *Williams* v. *Gallick, supra,* relied upon by the plaintiff. In that case there was a finding that the garnishee was possessed of a surplus after satisfying his lien. In this case, the facts are that after the mortgage debt was satisfied, no surplus existed. We are aware of the fact that there was evidence that the value of the property was greater than the amount of the mortgage debt, and that the Circuit Court so found; but this is insufficient to impeach a foreclosure sale conducted fairly and in conformity with the stipulations of the mortgage by the mortgagee in which the plaintiff was invited to participate.

2. The fact that the garnishee made a return that he had nothing in his possession belonging to the defendant entitles the plaintiff to no relief against him in this action, even though we should believe that his certificate was a false one. That return occasioned no loss to the plaintiff. Further there is authority to the effect that such a return under these circumstances was not a false one: 28 C. J. 86; 12 R. C. L. 781, 785. We prefer, however, not to determine this latter question.

It follows that the judgment of the Circuit Court must be reversed. A judgment should be entered in favor of the garnishee.

REVERSED. REHEARING DENIED.

RAND, C. J., and BEAN and McBRIDE, JJ., concur.